[No. A066506. First Dist., Div. Five. Mar. 28, 1995.]

PRINCESS HOTELS INTERNATIONAL, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
LINDA L. PEARSON et al., Real Parties in Interest.

### COUNSEL

Gudmundson, Siggins, Stone & Skinner, Harold A. Stone and Francis M. McKeown for Petitioner.

No appearance for Respondent.

Richard E. Schwartz, James E. Parrot, DuRard, Gangemi & McKenna and Robert L. DuRard for Real Parties in Interest.

### OPINION

**PETERSON. P. J.**—In this case, we hold that a hotel has no duty to warn its guests of a dangerous condition of adjacent property over which the hotel has no control, to wit, the ocean currents.

Petitioner Princess Hotels International, Inc. (Princess) is a defendant in an action for personal injuries and wrongful death brought by real parties Linda L. Pearson and the estate of her deceased former husband, Robin H. Pearson. Linda Pearson was seriously injured and Robin Pearson was killed when the two went swimming in the ocean adjacent to their Acapulco hotel. Their complaint alleges the hotel, purportedly under Princess's corporate control, was negligent for failing to warn them of the dangers of ocean swimming. Princess moved for summary judgment, arguing, inter alia, that the hotel had no duty to warn. The superior court denied the motion.

Princess now seeks a writ of mandate to compel the superior court to grant the motion. We stayed proceedings, issued the alternative writ, and heard oral argument. We agree with Princess and issue the writ of mandate.

## I.  Procedural Background and Facts

Although certain facts surrounding the swimming accident are in dispute, the basic facts are more or less established. The decedent, Robin Pearson, was a manufacturing sales representative for SEM Products, a California company which makes automobile paint. SEM awarded Mr. Pearson with an all-expense paid vacation at the Pierre Marques Hotel, Acapulco, in recognition of his sales record. Mr. Pearson left for his Acapulco vacation November 8, 1990. He took his former wife, real party Linda Pearson, along with him; there is a suggestion that the couple planned a reconciliation.

The Pearsons arrived at the Pierre Marques on the evening of November 9. The Pierre Marques is a 344-room hotel which shares a 480-acre ocean-front parcel, including 2 golf courses and gardens, with the 1,019-room Acapulco Princess Hotel. Adjacent to both hotels is a beach fronting the Pacific Ocean. Like all beaches in Mexico, the beach in front of the Pierre Marques is federal property, patrolled only by Mexican Marines and police. The beaches are considered government property, subject only to government control, and open to public access at any time.[1]

Each room in the Pierre Marques contains an information pamphlet called a "Directory of Services." This document contains various descriptions of hotel services and amenities including this notation: "The Beach in Front of the Hotels [¶] The beach in front of the hotels is under the exclusive jurisdiction of the Federal Government. The hotel cannot assume any responsibility for incidents that occur on the beach."

After their arrival in their room, the Pearsons went for an ocean swim between 10:30 p.m. and midnight. (The Pearsons were not swimming neophytes: Linda was a certified swimming instructor with some experience with ocean swimming; Robin was a certified scuba diver.) To reach the beach from the hotel, the Pearsons walked through a gate let into a seawall. Their path would have taken them past two signs, one a sign with a red pennant warning of high tides, the other a warning sign, which stated with red capital letters on a white background: "Warning[:] [¶] Swimming in

---

[1]There is some dispute over whether the hotel had some control over the beach, especially with regard to the hotel's ability to control access and lighting. As we will discuss *post*, this factual dispute is not determinative of the legal issue of whether there is a duty to warn.

THE OCEAN CAN BE DANGEROUS[.] THE BEACH IS FEDERAL PROPERTY AND THE HOTEL IS NOT RESPONSIBLE FOR ANY ACT OC[C]URRING IN THIS AREA[.] USE THE BEACH AND WATER AT YOUR OWN RISK[.] DO NOT VISIT THE BEACH AT NIGHT[.] DO NOT GO FAR FROM THE HOTEL AT ANY TIME[.]" In her deposition, Linda Pearson denied seeing either sign, although there is evidence that the beach area was well lit.

The November 9 swim went without incident. The next day, November 10, 1990, after consuming a light to moderate amount of alcohol, the Pearsons went back to the ocean for another swim. They walked through the hotel lobby with towels and in bathing attire, and no hotel employee warned them not to swim in the ocean. While swimming the Pearsons were caught in a sudden undertow, large waves, and riptide currents. Robin Pearson drowned; Linda Pearson was injured.

Linda Pearson and Robin Pearson's estate filed the present action for personal injuries and wrongful death. Their complaint alleged, inter alia, that as the operator of a hotel Princess had an affirmative duty to warn its guests of the known hazards of swimming in the ocean.[2]

Princess moved for summary judgment on the legal question of whether a hotel operator has a duty to warn guests of the dangers of ocean swimming.[3] The trial court denied the motion, ruling that *Swann* v. *Olivier* (1994) 22 Cal.App.4th 1324 [28 Cal.Rptr.2d 23] (*Swann*), a recent decision holding an adjacent landowner cannot possibly control the machinations of the ocean, was distinguishable because Princess "commercially benefit[ed] from the adjacent beach." Accordingly, the court concluded Princess had a legal duty to warn the Pearsons of the hazards of the surf.

II. DISCUSSION

*Swann* contains a cogent and exhaustive discussion of the California cases on the liability of a landowner for a defective or dangerous condition of adjacent property. In that case, a man was injured while swimming in the surf area of the "public ocean" (seaward of the high tide line) of a private

---

[2]Other allegations against other defendants are irrelevant to this writ proceeding and, therefore, are not discussed in this opinion.

[3]Princess also moved for summary judgment on its defense that real parties had wrongfully sued Princess because Princess had no corporate control over the Pierre Marques and was not, as real parties alleged, the corporate alter ego of the managing corporations of the Acapulco hotel. The trial court found triable issues of material fact on this issue. We do not discuss it herein because our resolution of the legal question of the duty to warn renders moot the factual question of actual control over the hotel. Whoever operated the Pierre Marques had no duty to warn guests of the dangers of ocean swimming.

beach. (22 Cal.App.4th at p. 1327.) He sued the owner of the beach for his injuries. The *Swann* court held that "The owners of a private beach do not own or control the ocean . . . . 'A defendant cannot be held liable for the defective or dangerous condition of property which it did not own, possess, or control.' " (*Id.* at p. 1326, quoting *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134 [211 Cal.Rptr. 356, 695 P.2d 653].)

Referring to this "commonsense rule," *Swann, supra*, 22 Cal.App.4th at pages 1329-1330, reviewed the California premises liability decisions uniformly holding that: (1) summary judgment may be granted where a defendant unequivocally establishes a lack of ownership, possession, or control (see, e.g., *Seaber* v. *Hotel Del Coronado* (1991) 1 Cal.App.4th 481, 484-485, 487-489 [2 Cal.Rptr.2d 405] (*Seaber*) [public street crossed by hotel patrons to reach a nearby parking lot]; *Donnell* v. *California Western School of Law* (1988) 200 Cal.App.3d 715, 718, 720 [246 Cal.Rptr. 199] [public sidewalk adjacent to law school in high-crime area]); and (2) "A corollary is that a landowner has no duty to warn of dangers beyond his or her own property when the owner did not *create* these dangers." (*Swann, supra*, 22 Cal.App.4th at p. 1330, italics in original; *Seaber, supra*, 1 Cal.App.4th at pp. 487-488.)

*Swann* then distilled the two exceptions to the rule: (1) Liability may be imposed when the landowners "imposed or created some palpable external effect on the area where the plaintiff was injured"; and (2) liability may be imposed on the landowners when they "received a special commercial benefit from the area of the injury plus had direct or de facto control of that area." (22 Cal.App.4th at p. 1330.) The first exception is inapplicable to the present case. The second, as *Swann* noted, "is commercial in nature." (P. 1331.) *Swann* reviewed several cases where business premises were found liable for dangers on adjacent property because "the defendants received direct pecuniary benefits from the plaintiff[s'] use of the areas where the plaintiffs were injured," *and* "either directly created the risk [citation] or exercised direct [citation] or de facto [citations] control over that area." (*Id.* at pp. 1331-1333.)

*Swann* then waxed eloquent: "In the present case, by contrast, any thought of 'control' over the area of injury is out of the question. The idea that anyone can control the ' "sledge hammering seas" ' and ' "inscrutable tides of God" ' is debatable, to say the least. (See *Carolina Beach Fish*[.] *Pier* v. *Town of Carolina Beach* (1970) 277 N.C. 297 . . . , quoting Melville's Moby Dick[.)] The idea that [defendants] can control the ocean adjacent to their land is nothing short of ludicrous. 'Even the fabled King Canute with

all of his power could not control the water by fiat.' (*Queen City Terminals, Inc.* v. *City of Cincinnati* (S.D.Ohio 1987) 666 F.Supp. 1035, 1039, fn. 4.) Because there was no commercial benefit to the defendants, nor creation or control by them of the hazards in the precise area where the injury occurred, we hold defendants owed no duty to warn the plaintiff of the dangerous condition of the ocean beyond their private beach." (22 Cal.App.4th at p. 1333.)[4]

*Swann* distinguished two cases, which are now relied on by real parties, in which there was at least the possibility raised of a plaintiff's recovery for surf injuries: *Buchanan* v. *City of Newport Beach* (1975) 50 Cal.App.3d 221 [123 Cal.Rptr. 338] and *Gonzales* v. *City of San Diego* (1982) 130 Cal.App.3d 882 [182 Cal.Rptr. 73]. However, both cases involved suits against public entities which owned beaches, and both decisions focused on questions of immunity. *Buchanan* assumed, perhaps questionably, that public entity control over a beach is the same as control over the raging surf. "*Buchanan* cannot be used as support for the idea that the private beach owners here somehow 'controlled' the surf by allowing [plaintiff] to come onto their . . . property. The distinction between the [beach] and the wet surf was never considered by the *Buchanan* court . . . ." (*Swann, supra,* 22 Cal.App.4th at p. 1335.) *Gonzales* did not make an issue of the question of control over the surf, but just assumed control over the depths from the entity's ownership of the beach and its posting of lifeguards. "*Gonzales* was most certainly wrong. [Citation.] Its rationale makes no sense. Posting lifeguards on a beach does *nothing* to alter the natural condition of the beach or the surf. At most it just invites people to enter the surf." (*Swann, supra,* 22 Cal.App.4th at p. 1335, fn. 14, italics in original.)

The present case seems to be *Swann* once removed: This is a suit against private adjacent landowners whose property abuts a public beach—owned and controlled by the Mexican government—in turn abutting the uncontrollable ocean. *Swann* provides compelling authority that the Pierre Marques had no duty to warn as a matter of law. Real parties argue that as an innkeeper, not just a landowner, the hotel had an enhanced duty to take care of its guests and thus a duty to warn. The California cases do not distinguish between landowners and innkeeper-landowners in this context of liability for adjacent premises. Indeed, *Seaber*, a leading case in the area, involved a hotel whose guest was killed while crossing a public street which the hotel

---

[4] The *Swann* court might have added Shakespeare to its literary romp: "GLENDOWER: I can call spirits from the vasty deep.
HOTSPUR: Why, so can I, or so can any man;
But will they come when you do call for them?"
(Shakespeare, The First Part of King Henry IV, act III; scene 1.)

knew was used by its guests to reach a nearby parking lot. The lack of premises liability, or a duty to warn, was based on the lack of control: "Implicit in the absence of control is that the Hotel cannot be reasonably expected to take action where it is, in fact, powerless to do so. [Citation]." (*Seaber, supra*, 1 Cal.App.4th at p. 493.) Even if, as real parties contend, there is a factual dispute regarding whether the hotel had some control over the beach (see fn. 1, *ante*), the fact remains that under the *Swann* analysis the ocean itself, the situs of the injury and death, was not under the control of the hotel.

The Florida courts have held that an innkeeper "has no duty to warn its guests of naturally occurring surf conditions off of a public beach. [Citation]." (*Adika* v. *Beekman Towers, Inc.* (Fla.Dist.Ct.App. 1994) 633 So.2d 1170, 1171 (*Adika*); accord, *Sperka* v. *Little Sabine Bay, Inc.* (Fla.Dist.Ct.App. 1994) 642 So.2d 654, 656 [The First District Florida Court of Appeal following the Third District's decision in *Adika*].) The *Adika* case is almost exactly on point with the case now before us. Its rationale is primarily that an innkeeper's duty is to protect a guest from unreasonable risks of physical harm while on the premises: " 'Nor is an innkeeper under a duty to a guest who is injured or endangered while he is away from the premises.' Restatement (Second) of Torts § 314A cmt. c (1965)." (633 So.2d at p. 1171.)

Other courts suggest a modern expansion of the traditional Restatement rule quoted by *Adika* against off-premises liability. Oregon courts leave it to the trier of fact to determine whether the innkeeper's failure to warn of a risk not known to the plaintiff was reasonable in a given case. (See *Fuhrer* v. *Gearhart by the Sea* (1988) 306 Ore. 434 [760 P.2d 874, 879-880].) The Ninth Circuit, in a case arising under Hawaii state law, held there was a duty to warn of "the powerful, surging surf [as] an unapparent, dangerous condition . . . ." (*Tarshis* v. *Lahaina Investment Corporation* (9th Cir. 1973) 480 F.2d 1019, 1021.) The *Tarshis* opinion is short on analysis and relies only on rather old law, which suggests that a private beach owner (not an innkeeper) was liable for injuries in adjacent rivers or oceans. (See *Gratto* v. *Palangi* (1958) 154 Me. 308 [147 A.2d 455]; *Perkins* v. *Byrnes* (1954) 364 Mo. 849 [269 S.W.2d 52, 48 A.L.R.2d 97].) The California *Swann* case provides a more cogent rationale than these cases; and in fact, *Gratto* holds a beach-owner is not liable for failing to warn of the danger of swimming near motorboats because the owner had no control over the public waters. (147 A.2d at pp. 459-460.)

One must be sensitive to the obvious fact that the hotel does substantially commercially benefit from its oceanfront premises, and that the proximity of

the Pacific Ocean no doubt draws substantial numbers of paying guests. The argument that because of this commercial benefit the hotel bears a duty to warn its guests of the ocean's dangers simply ignores the law of this state. The California cases, as correctly analyzed by *Swann*, require *control* as well as a commercial benefit; and the ocean is simply not within the control of humankind. Moreover, the mere fact that an aesthetic natural phenomenon attracts tourists may not ipso facto impose such liability: The owner of a concession of mountain cabins may use color brochures of the Trinity Alps to attract customers, but has no legal duty to warn of the dangers of mountain climbing.

We regularly review and must affirm summary judgments in tort cases denying recovery to plaintiffs who have plainly been the *sole* authors of their own injuries, through carelessness or by engaging in conduct fraught with risk. (See, e.g., *State of California* v. *Superior Court* (1995) 32 Cal.App.4th 325 [39 Cal.Rptr.2d 1] [A horseback rider, knowing horses and mountain bikes do not mix, nevertheless rides a state park trail on which they do; the horse is spooked by a mountain bike and throws plaintiff; plaintiff sues the *state* on a wholly invalid theory of liability.].) Ocean swimming is dangerous; in this case, that dangerous conduct exacted a horrible price, but the hotel simply bore no legal responsibility for the tragedy.

III.  DISPOSITION

Let a peremptory writ of mandate issue commanding respondent superior court to set aside its order denying Princess's motion for summary judgment, and to enter a new and different order granting the motion. The stay of proceedings will dissolve upon finality of this opinion as to this court.

King, J., and Haning, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied June 15, 1995.