220 F.3d 1126 (9th Cir. 2000)
 DAVID PACHECO, individually and as guardian ad litem for Trevor J. Pacheco, a minor, Plaintiff-Appellant,
v.
UNITED STATES OF AMERICA, PAUL KALETH, and PARKS MANAGEMENT COMPANY, Defendants-Appellees.
 No. 99-15421
 
 Office of the Circuit Executive
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted May 3, 2000--San Francisco, California
Filed July 31, 2000
 John C. Stein and Richard Gregg, The Boccardo Law Firm, LLP, San Jose, California; John R. Cady, Cady & Campbell, LLC, Platte City, Missouri; and B. E. Bergesen, III, Berkeley, California, for the plaintiffs-appellants.
 John N. Dahlberg and Charles P. Murrin, Dillingham & Murphy, LLP, San Francisco, California, for defendants-appellees Paul A. Kaleth and Parks Management Company.
 Appeal from the United States District Court for the Northern District of California, Ronald M. Whyte, District Judge, Presiding; D.C. No. CV-98-20376-RMW
 Before: Harlington Wood, Jr.,[1] Andrew J. Kleinfeld, and Susan P. Graber, Circuit Judges.
 Robert S. Mueller, III, and Gail Killefer and Yonkel Goldstein, United States Attorney's Office, San Jose, California, for defendant-appellee United States of America.
 WOOD, Circuit Judge:
 
 
 1
 Regardless whether under California law anyone may be responsible for this tragedy, it is absolutely clear that the slightest bit of care, thought, trouble, and expense by the defendants could have saved the lives of the three victims: eleven-year-old Ivy Pacheco and her mother and grandmother, both of whom tried in vain to rescue Ivy from the ocean. The district judge allowed defendants' motion to dismiss plaintiff's complaint with prejudice based on an interpretation of California law, but admitted at the hearing on the motion to dismiss that the case troubled him as it does us. Because the case was dismissed pursuant to Fed. R. Civ. P. 12(b)(6), we must take the complaint allegations of material fact as true and construe them in the light most favorable to the nonmoving party, here the appellant David Pacheco. Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C., 992 F.2d 932, 934 (9th Cir. 1993).
 
 I. BACKGROUND
 
 2
 In April 1997, Mary Pacheco, age 38; her daughter, Ivy; her eight-year-old son, Trevor; and Mrs. Pacheco's mother, Judith Rombold, age 63, residents of Kansas, drove to Pfeiffer Beach Day Use Area ("Beach"), a public recreational area which is part of the Los Padres National Forest, in the Big Sur area of the Pacific Coast.The defendant United States owns, manages, and controls the Beach for which it granted a special use permit to defendants Parks Management Company and Paul Kaleth, the owner and general manager of Parks Management Company.
 
 
 3
 The Beach is widely advertised by defendants and others with information about it also available on the internet. Publicity often describes the Beach as "a wide, sandy beach" and as "the first of Big Sur's truly great beaches. " United States Forest Service publications recognize that visitors to the Beach area "are quickly drawn to the white sand upon the beach" and that annually thousands of visitors come to the Beach for beach play.
 
 
 4
 One feature of the Beach, which is not advertised or otherwise made known, is that this particular Beach allegedly has particularly hazardous surf with strong riptides and undercurrents which flow swiftly with great force from the shore back into the ocean. When the Pachecos visited the Beach, there was no warning whatsoever about the riptides. The danger of the riptides, capable of carrying persons out into the ocean, is not readily apparent, particularly to young children who are less able to anticipate the dangers and cope with the undertow. Nevertheless, the dangerous riptides were known to defendants and to others in the vicinity. The drownings in this case were not the first such incident. Other visitors allegedly have been carried out to sea; only a couple of months before this incident one man had to be rescued by helicopter. Plaintiff alleges that defendants for at least a year prior to this incident had actual knowledge of the extreme hazards of this Beach and, in particular, should have foreseen the likelihood of a child being caught and swept away to drown.
 
 
 5
 The Beach, open year round, consists of an entry and information booth, three parking lots, a toilet facility, and one or more bulletin boards. Fees are collected upon entry, $5.00 per auto, $25.00 per tour bus, $15.00 for an annual pass, and $2.00 for bikes and hikers. There is a well-worn path to the Beach from the parking area. The bulletin board advises visitors of the rules, but at the time the Pachecos visited the Beach, there were no warnings on the bulletin boards or anywhere else about the dangers in the water. Parks Management employees are instructed to exhibit the "good host approach" to visitors. For the unsuspecting it is a cordial invitation to possible disaster because of a potentially deadly hazard known to the defendants, who in no way made any effort to share their knowledge with visitors. A needless trap was created with deadly consequences.
 
 
 6
 When the Pacheco family entered the Beach by automobile and paid the entry fee, they were given two toy plastic beach buckets for use on the Beach. One of the toy buckets was perforated, apparently to let sea water drain out when a child used it to play in the surf. While Ivy was playing and wading, not swimming, in a calm portion of the water, the surf rolled up on the Beach. It caught her, and the riptide swept her out into the ocean where she drowned. Her mother and her grandmother both rushed to save Ivy, but they too were caught by the riptide and carried into the ocean where they also drowned. Those familiar with riptides appreciate that a riptide can suck the sand out from underfoot, cause you to lose your balance and then swiftly sweep you out to sea. The Pacheco family from the Midwest was not familiar with the danger lurking beneath the blue waters at the Beach. It is not necessary to go into deep water, or even venture far into the surf, to be at the mercy of riptides.
 
 
 7
 In the complaint, the plaintiff alleges that the defendants owed a duty of care to him and to his three decedent family members and that the defendants breached that duty by failing to protect the decedents from or even to warn them of the danger of the riptides, which was well known to the defendants but not to the Pachecos. The complaint alleges that, had the Pachecos been warned of the danger ofwading or playing in the surf, Ivy would not have gone into the water. Plaintiff alleges therefore that defendants' negligence was the direct and proximate cause of the drownings.
 
 
 8
 Plaintiff filed a second amended complaint on November 2, 1998. Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The district court held a hearing on the motion to dismiss on February 5, 1999, and on February 12, 1999, issued its order. The district court noted in its order that there was no representation by the defendants that the ocean adjacent to the Beach was safe for swimming. The district court found that plaintiff's allegations did not establish that defendants had a duty to warn or guard against the naturally occurring dangers in the ocean adjacent to the Beach because, under California law, adjacent land owners cannot control the ocean. In reaching this conclusion, the district court relied on Swann v. Olivier, 28 Cal. Rptr. 2d 23 (Cal. Ct. App. 1994), Princess Hotels International, Inc. v. Superior Court of San Mateo County, 39 Cal. Rptr. 2d 457 (Cal. Ct. App. 1995), and Alcaraz v. Vece, 929 P.2d 1239 (Cal. 1997). Seeking California guidelines, as we must, we also examine those cases and compare them to the facts of the present case. The district court rejected the plaintiff's alternate theories of liability as well and dismissed the complaint with prejudice. Plaintiff filed this timely appeal.
 
 II. ANALYSIS
 
 9
 We are considering a California geographic area commonly referred to as Pfeiffer Beach, so first we ought to determine what the word "beach" means. One dictionary, Oxford American, defines "beach" as "the shore between high and low water mark, covered with sand." OXFORD AMERICAN DICTIONARY 52 (1980). However, Webster's Dictionary, in a more expansive definition, defines a beach as "a gently sloping shore of an ocean . . . covered by sand." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 189 (1981). It also defines a beach as "a stretch of sand placed beside a bathing area for the bather's pleasure and recreation." Id. That latter definition, it seems to us, is more in keeping with the general perception of what a beach is publically considered to be. Water is an important part of the beach. If it were not, the beach would be just a big sandbox. It takes water for children to build sand castles or to play in the water that washes up on the sand.
 
 
 10
 A dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is reviewed de novo. Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir. 1998). A complaint should not be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief." Williamson v. General Dynamics Corp., 208 F.3d 1144, 1149 (9th Cir. 2000). Appellant's claims against Kaleth and Parks Management Company are based on diversity of citizenship pursuant to 28 U.S.C. S 1332, and his claims against the United States are based on the Federal Torts Claims Act ("FTCA"), 28 U.S.C. S 1346. Under the FTCA, the United States may be liable, "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. S 2674; see also 28 U.S.C.S 1346(b). We apply the substantive law of California, as interpreted by the California Supreme Court. Karen Kane, Inc. v. Reliance Ins. Co., 202 F.3d 1180, 1183 (9th Cir. 2000).
 
 
 11
 First, we will examine the California cases cited by the district court in chronological order. Swann was decided in 1994 by the California Court of Appeals for the Fourth District. In Swann, the plaintiff was invited to a beach party by another guest and was injured in the surf. Swann, 28 Cal. Rptr. 2d at 23. The trial court entered summary judgment in favor of the defendants, a community association which owned the beach and a homeowner whowas permitted to use the beach for a private party. Id. at 24. The court of appeals affirmed based on "the common sense rule that one generally cannot be liable, as a landowner, for injuries that occur on property outside one's ownership, possession or control." Id . at 26. The court stated that "a landowner has no duty to warn of dangers beyond his or her own property when the owner did not create those dangers." Id. The Swann court concluded that, "[b]ecause there was no commercial benefit to the defendants, nor creation or control by them of the hazards in the precise area where the injury occurred," the defendants had "no duty to warn the plaintiff of the dangerous condition of the ocean beyond their private beach." Id. at 28. The court noted that to believe the defendants could control the ocean adjacent to their land was "nothing short of ludicrous." Id.
 
 
 12
 The next case considered by the district court was Princess Hotels International, Inc., which was decided by the California Court of Appeals for the First District in 1995. In this case, a couple were guests of a hotel on the oceanfront in Mexico. One was killed and the other injured while swimming in the ocean at a public beach owned by the Mexican government adjacent to their hotel. Princess Hotels Int'l, Inc., 39 Cal. Rptr. 2d at 458. The court held that the hotel had no duty to warn of dangerous conditions over which it had no control, the ocean currents. Id. at 457. That the hotel derived a commercial benefit from its guests was not sufficient without control of the hazard to permit tort recovery against the hotel for its failure to warn its guests of the dangers of ocean swimming. Id. at 461. The court further noted that "the ocean is simply not within the control of humankind." Id. The swimmers were held to be the "sole authors of their own injuries." Id.
 
 
 13
 Alcaraz was decided by the California Supreme Court in 1997. Although not a beach case, Alcaraz does offer some guidance as the court considered whether a landlord exercised control over adjacent hazardous property. Alcaraz, 929 P.2d at 1241. Alcaraz sued his landlord for personal injuries he sustained when he stepped on a broken water meter box located on a narrow city owned strip of land adjacent to the landlord's property. Id. The trial court granted summary judgment for the landlord because the landlord neither owned nor controlled the meter box located on city property. Id. at 1242. The court of appeals reversed, holding that a triable issue of fact existed " `as to whether the combination of the circumstances of defendants' actual or apparent control over immediately adjacent premises and the foreseeability of injury to plaintiff created a duty on the part of defendants to either warn plaintiff of the danger, or protect him from it, or both.' " Id. The California Supreme Court affirmed, but on different grounds, with one concurring and three dissenting opinions. The California Supreme Court held that the case could not be resolved as a matter of law even though the city owned the meter and the land where the meter was located, not the landlord. Id. at 1243. The court noted, " `The proper test to be applied to the liability of the possessor of land . . . is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others . . . .' " Id. (quoting Rowland v. Christian, 443 P.2d 561, 568 (Cal. 1968)). The court stated that the "duty to maintain land in one's possession in a reasonably safe condition exists even where the dangerous condition on the land is caused by an instrumentality that the landowner does not own or control." Id. Accordingly, the court determined that, if a known dangerous condition existed on land that was in the landlord's possession or control, the landlord owed a duty to take reasonable measures to protect persons on the land from that danger, whether or not the landlord owned or exercised control over the dangerous condition itself. Id. The court suggested that this duty could be satisfied by the posting of warnings or the erection of barricades on the property under the landlord's control;the landlord was not required to eliminate the dangerous condition. Id. at 1244.
 
 
 14
 In Alcaraz, there was evidence that the landlord treated the strip of land at issue as if he did own it. The landlord regularly cut the grass on the city strip, and the court concluded that Alcaraz had raised a viable issue of fact as to whether the landlord exercised control over the city strip sufficient to impose a duty to warn. The Alcaraz court examined both the Swann and the Princess Hotels International decisions and expressly disapproved of commercial benefit as a factor to consider in determining liability. Alcaraz, 929 P.2d at 1250. The California Supreme Court characterized the holding in Swann as "unremarkable" and, to the extent that it held that "owners of a private beach were not liable for injuries sustained by the plaintiff while in the ocean adjacent to the property because the defendants `do not own or control the ocean, and they are not responsible for injuries that take place in that ocean,' " consistent with the Alcaraz holding. Id. at 1249.
 
 
 15
 A case not cited by the parties but which is cited in Alcaraz is Husovsky v. United States, 590 F.2d 944 (D.C. Cir. 1978), in which the Court of Appeals for the D.C. Circuit held that the United States Government owed a duty to use reasonable care to protect passers-by on an adjoining public way from hazardous trees on land owned by the government of India. Alcaraz, 929 P.2d at 1246. The India-owned tract was contiguous to federal parkland and was marked by wooden stakes and granite boundary monuments bearing United States insignia identical to those located on the federally owned land. For at least ten years prior to the incident, federal employees had serviced and maintained the Indian land in the same manner as the federal parkland. Id. (quoting Husovsky, 590 F.2d at 949). As the Alcaraz court noted, the D.C. Circuit held " `that having assumed such notorious and open public display of control of the tract, the United States had a duty to exercise reasonable care in its supervision thereof.' " Id. (quoting Husovsky, 590 F.2d at 953).
 
 
 16
 None of the California cases on their own distinctive facts directly resolves the unusual fact situation in the present case. Swann expressly conditioned its non-liability holding on the fact that "there was no . . . creation by the[defendants] of the hazards." Swann, 28 Cal. Rptr. 2d at 28. Here, by handing out toys that implicitly suggested that children play in the water and by instructing beach-goers on all the things they should not do yet omitting any instructions about children playing in the water, the landowner did create the danger. By contrast, in Swann, the landowner did nothing to suggest that children play in the water, and instead told people that children needed careful supervision because of rip tides and that any swimming was at the swimmer's own risk. Id. at 24. There are some California legal guidelines to follow, but there is also some flexibility. We shall attempt to follow California law but, in its absence, we must predict as best we can what the California Supreme Court would do in these circumstances. Karen Kane, Inc., 202 F.3d at 1183. Our holding establishes no precedent in California law.
 
 
 17
 Looking at the facts in a practical, realistic, and common sense manner as we see it, this situation has the elements of something similar to entrapment, not criminal, but civil. As counsel for the United States conceded in response to questioning at oral argument, an express invitation to enter the ocean alters the analysis. While there was no express representation that the ocean adjacent to the Beach was suitable for wading, appellant alleges that at the time the Pachecos paid their entry fee to the Beach, they were given two plastic toy beach buckets for use at the Beach, one of which had a perforated bottom suitable for draining sea water. Supplying perforated buckets could be construed as encouraging children to use the water in their beach play as well as representing that suchaction would be safe. In a post-Alcaraz case, the California Court of Appeals held that a landowner's "duty of care encompasses a duty to avoid exposing persons to risks of injury that occur off site if the landowner's property is maintained in such a manner as to expose persons to an unreasonable risk of injury off-site." Barnes v. Black, 84 Cal. Rptr. 2d 634, 637 (Cal. Ct. App. 1999).[2]
 
 
 18
 In addition to any implied encouragement to enter the water, the facts as alleged in the complaint demonstrate that defendants exercised control over what visitors to the beach did. Given the terrain, the only means of access to the ocean at this point on the coast is by way of the Beach area. A well-marked path leads from the parking area down to the Beach and the adjacent ocean. Signs are posted on all bulletin boards in the Beach area, stating that the campground is operated by Parks Management Company under a special use permit from the United States Forest Service. Under the special use permit, Parks Management Company is required to adopt, promulgate, and enforce rules governing visitor use of the Beach. The rules, which are posted on the bulletin or entrance boards, are detailed and varied, covering topics including water pollution, propane use, gambling, liquor fines, fireworks, and refuse disposal. At the time of the Pachecos' visit, there were no rules or warnings whatsoever expressed about playing on the part of the beach that the water came over. One of the most important safety conditions for the Beach had been totally ignored. Defendants enforce their rules in a variety of ways and have the power to expel visitors who fail to abide by the rules from the Beach.
 
 
 19
 The Beach is staffed by Parks Management Company employees who are required to wear uniforms with name badges. A Parks Management Company employee must reside on site to act as a resident manager/host. Defendant Paul Kaleth is to be available on a 24-hour basis, and the management policy is "The buck stops here." That is what this case is about. The defendants' intent to extend their control beyond the actual Beach area is further evidenced by the fact that, as alleged in the complaint, defendants Parks Management Company and Kaleth "are contractually liable to protect the safety of visitors with respect to foreseeable hazards while on [Beach] property, or property immediately adjacent thereto." (Emphasis added.)
 
 
 20
 We find that the facts as alleged could support a claim based on a theory that the defendants actually invited children to play, by giving them toy buckets, in the water immediately adjacent to the dry part of the beach, and therefore had a duty to warn the Pachecos of the dangerous condition and breached this duty. Ivy Pacheco was not swimming in the ocean but rather wading in the surf that washed up on the sand. The defendants had actual knowledge of the danger of this behavior, yet did nothing to pass this knowledge on to visitors. The defendants had created an open public display of their control of the area, and there was nothing to signal that their control ended at the high water mark. There was no way for the public to get to the water without paying the access fee at the Beach entry and information booth. While defendants could not eliminate the hazards in the ocean, they could satisfy their duty to appellants by posting or distributing warnings on the property under their control. See Alcaraz, 929 P.2d at 1244. It is a triable question whether under all the circumstances it is reasonable to concludethat the portion of the water immediately adjacent to the dry part of the Beach was controlled by defendants. That is not the same as control of the ocean, but only control of the limited area which the ocean sometimes covers.
 
 III. CONCLUSION
 
 21
 This opinion is not intended to decide the issues of control or liability, but only to illustrate that there is work remaining for the trial court. Appellant has pled sufficient facts to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Therefore, the district court order dismissing plaintiff's complaint with prejudice is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.
 
 
 22
 REVERSED AND REMANDED.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation.
 
 
 [2]
 The court in Alcaraz expressly noted that under the facts presented it had no occasion "to decide under what circumstances, if any, a possessor of land may owe a duty to warn persons on the property of a hazard located on adjacent property that he or she does not own, possess, or control." Alcaraz, 929 P.2d at 1241. The appellate court in Barnes held that "[a] landlord's duty of care to avoid exposing others to a risk of injury is not limited to injuries that occur on premises owned or controlled by the landowner." Barnes, 84 Cal. Rptr. 2d at 637.
 
 
 GRABER, Circuit Judge, dissenting:
 
 23
 No judge comes lightly to a tragic case like this one. But the gravity of a case does not change the nature of our duty. I respectfully, and cheerlessly, dissent.
 
 
 24
 In my view, the state-law question whether Defendants had a duty to warn Plaintiff and his family of the conditions in the ocean off Pfeiffer Beach is controlled by the decision of the California Court of Appeal in Swann v. Olivier, 28 Cal. Rptr. 2d 23 (Ct. App. 1994). The plaintiff in Swann was injured in the surf while attending a beach party. He brought an action alleging that the owner of the beach had failed to warn him of riptides and other hazardous ocean conditions. See id. at 23-24. The court explained that the decisive factor in the case was the "relatively straightforward" one of "where the injury took place and whether the defendants had any duty to warn of hazards in that area." Id. at 25. After noting the general rule under California law that a landowner "cannot be liable" for "injuries that occur on property outside one's ownership, possession or control," the Swann court held that a beachfront landowner "has no duty to warn of dangers beyond his or her own property when the owner did not create those dangers." Id. at 26; see also Alcarez v. Vece, 929 P.2d 1239, 1249 (Cal. 1997) ("The holding in Swann is unremarkable. It held . . . that the owners of a private beach were not liable for injuries sustained by the plaintiff while in the ocean adjacent to the property because the defendants do not own or control the ocean, and they are not responsible for injuries that take place in that ocean.") (internal quotation marks omitted).
 
 
 25
 That holding resolves this case. Like the plaintiff in Swann, Ivy Pacheco "was wading and playing" in shallow water at the edge of the beach when "she was suddenly caught up in the surf." [Complaint at 11.] Because Defendants did not create or control the deadly riptide, Defendants had no duty under California law to warn of its existence.
 
 
 26
 The majority holds that Swann does not control for two reasons. First, the majority concludes, based on the allegations in the complaint, that Defendants implicitly invited Plaintiff and his family to play in the ocean surf and thereby incurred a duty to warn of the riptide. Second, the majority concludes, again based on the allegations in the complaint, that Defendants controlled the surf area in which Ivy Pacheco was caught by the riptide.
 
 
 27
 Those very factors, however, were considered and deemed irrelevant in Swann. The Swann court discussed the issue of "entrapment" while distinguishing the California Supreme Court's decision in Schwartz v. Helms Bakery Ltd., 430 P.2d 68 (Cal. 1967). But under Schwartz, as construed in Swann, "an invitor could be liable [for injuries incurred on a public street] if, and only if, the dangerous condition giving rise to the injury was within the invitor's control." Swann, 28 Cal. Rptr. 2d at 28 (internal quotation marks omitted) (emphasis added); see also Schwartz, 430 P.2d at 75 n.10. Under Swann, an invitation to swim, without more, does not establish a duty to warn of ocean hazards.
 
 
 28
 Swann also undermines the majority's suggestion that, because Defendants controlled access to the beach, a jury could conclude that Defendants controlled "the portion of the water immediately adjacent to the dry part of the Beach." Maj. op. at 9131. As noted above, in Swann, the plaintiff "was injured in the `surf' of the public ocean, seaward of the mean high tide line that marks the border of [the defendant]'s private property." Swann, 28 Cal. Rptr. 2d at 24. In this case, likewise, Ivy Pacheco was "wading and playing " in shallow water at the edge of the beach when she was "caught up in the surf." [Complaint at 11.] Swann cannot be distinguished from this case based on the concept of control; for example, there is no allegation here that Defendants altered the ocean floor or pattern of currents by dredging, or the like.
 
 
 29
 Swann establishes a bright-line rule for ocean-injury cases, at least in the absence of a defendant's alteration of the ocean area itself. The sole issue is "where the injury took place and whether the defendants had any duty to warn of hazards in that area." Id. at 25. A defendant has no such duty if the place of injury is "seaward of the mean high tide line. " Id. at 24. The majority impermissibly departs from Swann 's bright-line approach.
 
 
 30
 In summary, Plaintiff's complaint fails to state a claim upon which relief can be granted under California law as it currently stands. Cf. Cabrera v. City of Huntington Park, 159 F.3d 374, 378 (9th Cir. 1998) ("[T]his [c]ourt's duty is to ascertain and apply the existing California law, not to predict that California may change its law and then to apply our notion of what that change might or ought to be.") (internal quotation marks and original brackets omitted). Accordingly, I would affirm the judgment of the district court.