**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAR 6 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CINNAMON MILLS, individually on a representative basis, and on behalf of all others similarly situated,<br><br>    Plaintiff-Appellee,<br><br> v.<br><br>TARGET CORPORATION,<br><br>    Defendant-Appellant. | No. 21-56308<br><br>D.C. No.<br>5:20-cv-01460-JGB-KK<br><br><br>MEMORANDUM* |
| CINNAMON MILLS, individually on a representative basis, and on behalf of all others similarly situated,<br><br>    Plaintiff-Appellant,<br><br> v.<br><br>TARGET CORPORATION,<br><br>    Defendant-Appellee. | No. 21-56309<br><br>D.C. No.<br>5:20-cv-01460-JGB-KK |

Appeal from the United States District Court
for the Central District of California
Jesus G. Bernal, District Judge, Presiding

Argued and Submitted February 9, 2023

---

  *  This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

San Francisco, California

Before:  McKEOWN, BYBEE, and BUMATAY, Circuit Judges.

Cinnamon Mills, on behalf of herself and others similarly situated, sued Target Corporation, alleging several violations of California labor law.  As relevant here, Mills alleged Target failed to pay her vested vacation in violation of California Labor Code § 227.3 and willfully failed to pay final wages in violation of § 203.  Specifically, Mills alleges Target violated § 227.3 because it paid her at her final base rate of $13 per hour rather than her final wage rate, which included a $2 per hour shift differential at the time she was terminated.  The district court granted summary judgment in favor of Mills on her § 227.3 claim but granted summary judgment to Target on her § 203 claim.  The parties cross-appealed.  We have jurisdiction under 28 U.S.C. § 1291 and affirm.

We review the grant of summary judgment de novo.  *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022).  On review, "we must determine whether the evidence, viewed in a light most favorable to the non-moving party, presents any genuine issues of material fact and whether the district court correctly applied the law." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2016) (simplified).

1.  California Labor Code § 227.3 provides,

[W]henever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment

2

or employer policy respecting eligibility or time served[.]

At issue is the meaning of the term "final rate." The district court concluded that "final rate" refers to the terminated employee's final "wage" rate, which includes shift differentials. Target, on the other hand, reads "final rate" to mean the employee's final "vacation" rate, which in this case was Mills's base rate. We agree with the district court.

Because California courts have not answered this question, our job is to "predict as best we can what the California Supreme Court would do in these circumstances." *Pacheco v. United States*, 220 F.3d 1126, 1131 (9th Cir. 2000). Under California law, courts give statutory language "a plain and commonsense meaning" and consider that language "in the context of the statutory framework as a whole." *Skidgel v. Cal. Unemployment Ins. Appeals Bd.*, 493 P.3d 196, 202 (Cal. 2021) (simplified).

We read "final rate" to refer to final "wage" rate for three reasons. First, the term "at his final rate" follows "wages." Under the nearest-reasonable-referent canon, "final rate" modifies "wages." *See Hall v. U.S. Dep't of Agric.*, 984 F.3d 825, 837–38 (9th Cir. 2020). So it would be natural to read the phrase "paid to him as wages at his final rate" as requiring employers to pay terminated employees vested vacation "as wages at his final [wage] rate." Indeed, "wage rate" appears in other provisions throughout the Labor Code, unlike "vacation rate." *See, e.g.*, Cal. Lab.

3

Code § 1773.11 (requiring state agencies to provide "wage rates" for workers to execute a contract with a private entity); § 2673.2 (referring to overtime hourly rates as "premium wage rates").

Second, interpreting § 227.3 as requiring payment at the "wage rate" gives a more natural meaning to the term "final." For many employees, "wage rates" change over time. And so, "final" indicates that the rate of wages to be paid is the rate at the employee's termination—no matter when the employee accrued the vacation. Following Target's interpretation, "final" has meaning only in the rare situation when an employer's policy prescribes paying vested vacation based on the rate of vacation pay applicable at the time the employee accrued the vacation. Under Target's interpretation, the term "final" would supersede the employer's vacation policy and require the employer to pay the employee under the "final" vacation rate in the policy. While possible, Target's interpretation is less straightforward.

Third, Target argues that § 227.3's "final rate" is determined "in accordance with such contract of employment or employer policy." Cal. Lab. Code § 227.3. But that clause refers to contracts or policies "respecting eligibility or time served." *Id*. Thus, the phrase most naturally refers to policies regarding the "amount of vacation time for which an employee is eligible"—not vacation pay rates. *Suastez v. Plastic Dress-Up Co*., 647 P.2d 122, 127 (Cal. 1982).

Target also relies on policy concerns and a California state agency's

4

interpretation of § 227.3. But our duty is to interpret the statute as the California Supreme Court would. *Pacheco*, 220 F.3d at 1131. And giving "a plain and commonsense meaning" to the text here counsels interpreting "final rate" to mean the "final rate of wage pay," which in this case includes Mills's base pay and the pay differentials she received when she was terminated.

2. California Labor Code § 203 penalizes employers who "willfully fail[] to pay . . . any wages of an employee who is discharged." At issue is whether Target acted "willfully" when it paid Mills her vested vacation at only her base rate. The district court concluded that Target acted in good faith and therefore did not act "willfully" under § 203. We agree.

California courts recognize a good faith defense that precludes liability under § 203. *See Barnhill v. Robert Saunders & Co.*, 177 Cal. Rptr. 803, 806–07 (Cal. Ct. App. 1981). In *Barnhill*, the court concluded that because the law was uncertain, and because the defendant's actions were based on a good faith belief of what the law required, the defendant did not act "willfully" under § 203. *Id.*

The facts here track *Barnhill* neatly. Mills has presented no evidence showing Target's withholding of wages was based on anything other than its misunderstanding of the law. And the law on this issue has been uncertain, as multiple courts have reached opposing conclusions. *Compare, e.g., Wang v. Chinese Daily News, Inc.*, 435 F. Supp. 2d 1042, 1049 (C.D. Cal. 2006) (supporting Mills's

5

position), *aff'd*, 623 F.3d 743, 762 (9th Cir. 2020), *judgment vacated*, 565 U.S. 801 (2011) (Mem.), *with Drumm v. Morningstar*, 695 F. Supp. 2d 1014, 1019 (N.D. Cal. 2010) (supporting Target's position).  Target therefore did not act "willfully" under § 203.

**AFFIRMED.**[1]

---

[1] We deny Mills's motion for judicial notice as unnecessary.  *See* Fed. R. Evid. 201(a), advisory comm. note to 1972 amendments; *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2010).