[No. D010834. Fourth Dist., Div. One. Dec. 2, 1991.]

DONNA SEABER et al., Plaintiffs and Appellants, v.
HOTEL DEL CORONADO, Defendant and Respondent.

482

### COUNSEL

Robinson, Robinson & Phillips and John D. Rowell for Plaintiffs and Appellants.

Roger A. Geddes for Defendant and Respondent.

### OPINION

**WORK, Acting P. J.**—Donna Seaber, the surviving wife of Harry Seaber, and their three children appeal a summary judgment entered in favor of Hotel Del Coronado (Hotel) on their wrongful death action arising from a pedestrian/vehicular accident which resulted in the death of pedestrian Harry Seaber. He was killed when he was struck in a marked crosswalk on Orange Avenue, adjacent to the Hotel's property, while using the crosswalk for egress from the Hotel. Relying on *Sexton* v. *Brooks* (1952) 39 Cal.2d 153 [245 P.2d 496], they contend the trial court erred in holding the pedestrian crosswalk on Orange Avenue did not provide a special benefit to the Hotel; no alteration in Orange Avenue independently and specially benefitted the Hotel; and, in any event, the Hotel's lack of control over the sidewalk extinguished any obligation it may have had to warn and alternatively it had no feasible method to control traffic or to warn pedestrians. For the reasons which follow, we conclude the trial court properly granted the Hotel's motion for summary judgment. Accordingly, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 14, 1987, while leaving the premises of the Hotel, Harry Seaber was killed when he was struck in a marked crosswalk on Orange Avenue, State Highway 75, by a vehicle driven by Kevin Almeida. The crosswalk was located on public property adjacent to the property of the

Hotel and was used by business invitees of the Hotel for ingress and egress purposes. At the time of the accident, Seaber was returning to his car which he had parked across the highway from the Hotel in the parking lot of the Glorietta Bay Inn, a lot frequently used by patrons and business invitees of the Hotel.

The crosswalk within which the accident occurred was located on State Highway 75, owned by the State of California, and within the control of the California Department of Transportation (Cal Trans) which is responsible for making any final decisions as to the location, operation, design, placement, removal and maintenance of such crosswalks. The crosswalk was located just below the crest of a hill, south of the entrance of the Hotel, as State Highway 75 curves slightly to the right for a driver travelling south. To motorists travelling south, the view of the crosswalk was obstructed because of the downward slope of the roadway. The crosswalk was located midblock on the west side of the street; it was not controlled by a signal; and there were neither signs nor flashing lights to warn approaching motorists they were approaching a crosswalk.

In early 1974, the crosswalk was removed by Cal Trans because of safety concerns. However, by letter dated May 31, 1974, the Hotel president, Carleton Lichty, wrote the Cal Trans District Director, noting the pedestrian crossing had been removed at the Hotel entrance and requesting Cal Trans reinstitute some type of traffic control so as to provide Hotel guests and employees sufficient time to get out of the front entrance and walk across the street. He further expressed dissatisfaction with the use by Hotel guests of a traffic light system located approximately one block to the north, which had been Cal Trans's preferred crossing location.[1] By letter dated June 13, 1974, Cal Trans advised Lichty it would provide a painted crosswalk which would provide good access to the bus stop, but it still considered the signaled crossing a block to the north was the preferred place for the Hotel to direct its guests, encouraging it to guide pedestrians to that intersection from the Hotel.[2] The assistant transportation engineer for Cal Trans responsible for the crosswalk interpreted Lichty's letter as a request to replace the crosswalk

[1]The letter expressly stated:

"I would appreciate your looking into our exit traffic problem at the front entrance of the hotel during the afternoon rush when NAS is letting out their employees.

"The traffic light at Dana and Orange calls for no delay and the cars are continuous, making it very difficult for our guests and also making it very dangerous for a pedestrian to cross the street at Dana. I was almost run down the other day.

"In addition, our pedestrian crossing on Highway 75 at the entrance has been removed, making it almost impossible to get across the street.

"If there is any way to just give our guests a few seconds to get out the front entrance, and someway to allow us to walk safely across the street, I would be very grateful."

[2]The letter stated: "The matter of pedestrians is a difficult one. Fortunately our accident records indicate there has been no problem in this regard. We will provide a painted crosswalk

which had been removed. He authorized the replacement of the crosswalk at the entrance to the Hotel where it existed at the time of the accident,[3] because it was adjacent to Glorietta Boulevard and provided access to the bus stop on the northeast side of Glorietta Boulevard which was used by Hotel employees. In his affidavit, he explained the replacement was expressly the result of the Hotel's request, since Cal Trans had just removed the crosswalk in that area in the early part of 1974 and believed it was safer for pedestrians to cross at the intersection of State Highway 75 and Dana Avenue to the north. Although Cal Trans advised the Hotel of its decision to reinstall the crosswalk, the Hotel made no objection to that specific remedy to its problem, even though the Hotel was well aware of the dangerous situation precipitated by the particular crosswalk.[4]

The amended complaint for wrongful death and negligent infliction of emotional distress names the driver (Almeida), the Hotel, City of Coronado, State of California, Cal Trans and several other state governmental entities. Challenging the Seabers' theory that it is legally responsible for the placement of the crosswalk in this dangerous location because it was located there by the state to provide the Hotel with a special benefit, the Hotel moved for summary judgment. In granting the motion, the trial court concluded:

"The request by the Hotel for a pedestrian crossing on the state road next to the Hotel does *not* create a special benefit to the Hotel. There was no alteration to said road which would independently and specially benefit only the Hotel. *Sexton* v. *Brooks*, 39 [Cal.2d] 153, 157.

"However, even if there was a special benefit to the Hotel, the Court finds that the lack of control over the sidewalk extinguishes whatever the duty Hotel may have had to warn pedestrians. The Hotel had no control of traffic and had no feasible method to warn pedestrians. *Gray* v. *American West Airlines*, 89 D.A.R. 4190 [209 Cal.App.3d 76, 256 Cal.Rptr. 877] (Decided Mar. 29, 1989); *Donnell* v. *California Western School of Law* (1988), 200 Cal.App.3d 715 [246 Cal.Rptr. 199]."

## STANDARD OF REVIEW

■ "A summary judgment may be granted only if no material triable issue of fact exists[, as the] moving parties' affidavits must set forth facts

at the north side of the Glorietta Blvd./Route 75 intersection, which will permit good access to the bus stop located in the northeast quadrant of the intersection. Although as indicated in your letter it is not always easy to cross Orange Avenue at Dana Place this, however, is still the safest and best place for pedestrians to cross. If possible it would be desirable to guide the pedestrians to this intersection from the hotel."

[3]The crosswalk was again removed by Cal Trans in 1976 as part of a general plan to remove crosswalks within the city; however, it was replaced again within six months due to protest from the Hotel.

[4]The Hotel conceded it had offered $250,000 to the City of Coronado and/or Cal Trans to have signals installed.

entitling them to a judgment as a matter of law." (*Lopez* v. *McDonald's Corp.* (1987) 193 Cal.App.3d 495, 503 [238 Cal.Rptr. 436]; *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].) "Designed to resolve litigation by avoiding needless trials [citation], the purpose for summary judgment 'is to penetrate evasive language and adept pleading and to ascertain, by means of affidavits, the presence or absence of triable issues of fact' [citation]." (*Tollefson* v. *Roman Catholic Bishop* (1990) 219 Cal.App.3d 843, 852 [268 Cal.Rptr. 550], quoting *Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) Similarly, where there are no triable issues of fact and the parties' contentions involve a question of law, summary judgment is proper. (*Lopez* v. *Mcdonald's Corp.*, *supra*, 193 Cal.App.3d at p. 503; *Ferrell* v. *Southern Nevada Off-Road Enthusiasts, Ltd.* (1983) 147 Cal.App.3d 309, 313 [195 Cal.Rptr. 90].) Consequently, the trial court's role in ruling on motions for summary judgment is strictly confined to determining whether material issues of fact exist and not to decide the merits of any of those issues. (*Molko* v. *Holy Spirit Assn.*, *supra*, 46 Cal.3d at p. 1107; *Tollefson* v. *Roman Catholic Bishop*, *supra*, 219 Cal.App.3d at p. 852.) Mindful it is a drastic procedure which deprives a party of a trial on its merits, summary judgment should be employed with caution to avoid becoming a substitute for trial determination of the facts and merits of a cause. (*Molko* v. *Holy Spirit Assn.*, *supra*, 46 Cal.3d at p. 1107.) ■ Finally, "[i]n examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion." (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953], quoting *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

### THE LAW ON LIABILITY OF A LANDOWNER FOR A DANGEROUS CONDITION ON AN ABUTTING PUBLIC STREET OR SIDEWALK

■ "In premises liability cases, summary judgment may properly be granted where a defendant unequivocally establishes its lack of ownership, possession, or control of the property alleged to be in a dangerous or defective condition." (*Gray* v. *America West Airlines, Inc.* (1989) 209 Cal.App.3d 76, 81 [256 Cal.Rptr. 877]; *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134 [211 Cal.Rptr. 356, 695 P.2d 653].) ■ Generally, absent statutory authority to the contrary, a landowner is under no duty to maintain in a safe condition a public street or sidewalk abutting upon his property (*Sexton* v. *Brooks*, *supra*, 39 Cal.2d at p. 157), or to warn travelers of a dangerous condition not created by him but known to

him and not to them (37 Cal.Jur.3d, Highways and Streets, § 70, pp. 178-179). However, an abutting landowner has always had an obligation to refrain from affirmative conduct which results in a dangerous condition upon public streets or sidewalks. (*Selger* v. *Steven Brothers, Inc.* (1990) 222 Cal.App.3d 1585, 1592 [272 Cal.Rptr. 544].)[5] Moreover, an abutting landowner who has altered an adjacent sidewalk for the benefit of his property apart from its ordinary use for which it was designed, has a duty to employ ordinary care in making such alteration and in maintaining that portion of the sidewalk in a reasonably safe condition. (*Sexton* v. *Brooks, supra*, 39 Cal.2d at p. 157; *Peters* v. *City & County of San Francisco* (1953) 41 Cal.2d 419, 423 [260 P.2d 55]; *Selger* v. *Steven Brothers, Inc., supra*, 222 Cal.App.3d at p. 1594; BAJI No. 8.50.) ■ Indeed, "[a] landowner may also be liable under some circumstances where the public sidewalk has been constructed or altered by the city in a particular manner for the special benefit of his property. For example, if an inherently dangerous condition is created on a public sidewalk abutting an entrance to a building, and this is done at the request of the owner and for his special benefit in order to serve a use independent of and apart from the ordinary and accustomed use for which sidewalks are designed, the landowner may be under a duty to warn invitees of the hazard." (*Sexton* v. *Brooks, supra*, 39 Cal.2d at pp. 157-158; *Kopfinger* v. *Grand Central Pub. Market* (1964) 60 Cal.2d 852, 858-859 [37 Cal.Rptr. 65, 389 P.2d 529]; *Donnell* v. *California Western School of Law* (1988) 200 Cal.App.3d 715, 721 [246 Cal.Rptr. 199]; *Ross* v. *Kirby* (1967) 251 Cal.App.2d 267, 270 [59 Cal.Rptr. 601].)

The general rule in California, as codified in Civil Code section 1714, is that all landowners are responsible for an injury caused to another by the want of ordinary care or skill in the management of their property. ■ Thus, the proper test to be applied in determining the liability of a landowner is whether the landowner has acted as a reasonable person in managing the property in view of the probability of injury to others. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 118-119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) Judicial rejection of this fundamental California policy of liability for negligent conduct and thus the holding of all persons responsible for injuries caused by their negligence arises only when clearly supported by public policy considerations. (*Rowland* v. *Christian, supra*, 69 Cal.2d at p. 112; *Lopez* v. *McDonald's Corp., supra*, 193 Cal.App.3d at p. 505.) These considerations include " '. . . the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury

---

[5]"Under the common law, a person who creates a dangerous condition on a public roadway or walkway is liable for foreseeable injuries caused thereby." (*Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 846 [206 Cal.Rptr. 136, 686 P.2d 656].)

suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]' " (*Becker* v. *IRM Corp.* (1985) 38 Cal.3d 454, 467 [213 Cal.Rptr. 213, 698 P.2d 116, 48 A.L.R.4th 601], quoting *Rowland* v. *Christian, supra,* 69 Cal.2d at pp. 112-113; *Gray* v. *America West Airlines, Inc., supra,* 209 Cal.App.3d at p. 82; *Donnell* v. *California Western School of Law, supra,* 200 Cal.App.3d at pp. 726-729, dis. opn. of Wiener, J.)

Although the scope of premises liability has greatly expanded over the past decade and a half, liability has been restricted within the context of landowners whose property abuts public sidewalks and streets. For, it cannot be ignored that premises liability is predicated upon the concept that possession includes the attendant right to manage and control, justifying liability when one has failed to exercise due care in property management. (*Owens* v. *Kings Supermarket* (1988) 198 Cal.App.3d 379, 386 [243 Cal.Rptr. 627]; *Martinez* v. *Pacific Bell* (1990) 225 Cal.App.3d 1557, 1561 [275 Cal.Rptr. 878].)

■ "The courts, therefore, have consistently refused to recognize a duty to persons injured in adjacent streets or parking lots over which the defendant does not have the right of possession, management and control. (See, e.g., *Steinmetz* v. *Stockton City Chamber of Commerce* (1985) 169 Cal.App.3d 1142 . . . [host of a business party could not be held liable for a criminal assault on a guest that occurred in a nearby parking lot that the host neither owned nor controlled]; *Nevarez* v. *Thriftimart, Inc.* (1970) 7 Cal.App.3d 799 . . . [supermarket owed no duty of care to a young child who was hit by a car in an adjacent public street while returning home from a grand opening of the store].)" (*Owens* v. *Kings Supermarket, supra,* 198 Cal.App.3d at p. 386.)

### THE ELASTIC CONCEPT OF BUSINESS PREMISES IS NOT APPLICABLE HERE

The Seabers' subtle reliance upon the elastic concept of business premises and control giving rise to the liability of mobile street vendors for injuries to patrons (*Schwartz* v. *Helms Bakery Limited* (1967) 67 Cal.2d 232 [60 Cal.Rptr. 510, 430 P.2d 68]) is misplaced. This exception is extremely narrow and unique to the operation of a travelling convenience business, which encourages patrons to use public streets and sidewalks as a means of access, warranting imposing liability for an injury occurring to a customer within the immediate vicinity of the vendor's vehicle under circumstances

within the range of the vendor's reasonable supervision and control. (*Owens* v. *Kings Supermarket, supra,* 198 Cal.App.3d at p. 387; *Steinmetz* v. *Stockton City Chamber of Commerce* (1985) 169 Cal.App.3d 1142, 1146 [214 Cal.Rptr. 405].) This elastic concept of business premises giving rise to liability is uniquely appropriate to the street vendor, whose commercial activities are conducted from a mobile vehicle from street to street, attracting patrons from predictable groups and locations who arrive along reasonably predictable approach routes. " 'While the street vendor cannot control traffic on the street around him he can, to a degree, control his own movements, the places where he will do business and, thus, the avenues of approach to it.' " (*Owens* v. *Kings Supermarket, supra,* 198 Cal.App.3d at pp. 387-388, quoting *Nevarez* v. *Thriftimart, Inc.* (1970) 7 Cal.App.3d 799 [87 Cal.Rptr. 50].) However, no decision has applied this elastic concept of business premises to support liability where one's business is conducted on private property in a fixed location. (*Owens* v. *Kings Supermarket, supra,* 198 Cal.App. 3d at p. 387; *Steinmetz* v. *Stockton City Chamber of Commerce, supra,* 169 Cal.App.3d at p. 1146; see also *Martinez* v. *Pacific Bell, supra,* 225 Cal.App.3d at p. 1563.)

### THE TRIAL COURT PROPERLY CONCLUDED THE SEABERS FAILED TO SATISFY THE REQUIREMENTS OF THE RULE SET FORTH IN SEXTON V. BROOKS

Here, relying primarily upon the rules set forth in *Sexton* v. *Brooks, supra,* 39 Cal.2d at pages 157-158, the Seabers contend a reasonable trier of fact could find a dangerous crosswalk was installed on the property abutting the Hotel at the Hotel's request to specifically benefit the Hotel by its convenient location and that it served a use separate from the ordinary use because of its close proximity to the Hotel. They emphasize, that without it, the closest signalized crosswalk was a block away, and to send patrons a block away to cross at Orange Avenue, according to the former president and general manager of the Hotel, would not be first class. Citing the Supreme Court's language in *Schwartz* v. *Helms Bakery Limited, supra,* 67 Cal.2d at pages 239-240, declaring an invitor has a duty to warn an invitee of a dangerous condition existing in a public street or sidewalk adjoining his business which because of the invitor's special benefit, convenience or use of the public way creates a danger, they assert a trier of fact could find the Hotel exercised "control" through its request for an alternative route for its guests to cross State Highway 75 from the fact that Cal Trans promptly reinstalled the crosswalk without further complaint or comment from the Hotel that the location was dangerous. Indeed, it is alleged the Hotel invited its patrons to use the crosswalk as an approach to its property.

The special benefit rule articulated in *Sexton* v. *Brooks, supra,* 39 Cal.2d 153, does not control this case. Granted, a trier of fact could reasonably find

a dangerous crosswalk was reinstalled by Cal Trans on public property abutting the Hotel at the Hotel's request for its nonexclusive, special benefit in light of its convenient location. It is undisputed the Hotel specially benefitted by the location of the crosswalk, providing a convenient crossing for its employees to walk to the bus stop as well as convenient access for patrons to the Hotel, its restaurants, bars and shops. However, the crosswalk was available and presumably used by the general public at large, by anyone who wished to cross State Highway 75. (See generally, *MacLean* v. *Parkwood, Inc.* (D.N.H. 1965) 247 F.Supp. 188, 192, affd. *MacLean* v. *Parkwood, Inc.* (1st Cir. 1966) 354 F.2d 770.) Consequently, any special benefit derived from the crosswalk by the Hotel was not exclusive in character. (See *Swett* v. *Village of Algonquin* (1988) 169 Ill.App.3d 78 [523 N.E.2d 594, 602].)[6] The significance of the degree of exclusivity is that proportionately, the greater the exclusivity of use, the more an improvement benefits solely the adjoining property and the more reasonable it is to impose upon the landowner a duty to maintain the improvement in a reasonably safe condition.

Moreover, the crosswalk did not serve a use independent and apart from the ordinary and accustomed use for which crosswalks are designed for public streets adjoining public crosswalks. It simply served its designed, common use. This requirement is essential because it guarantees that before determining whether to shift the burden to the landowner of warning others of a hazard, the variable of whether the modification and resulting risk is latent and unsuspecting in character to the passerby is considered.[7] Further, it evinces a reasonable policy determination to hold liable an adjoining landowner for an improvement, the use of which is foreign to the common use of the public street or sidewalk, which directly benefits the landowner's adjoining private property. Accordingly, where the improvement or modification does not serve such a foreign use, it is unreasonable to impose upon the landowner any duty to maintain it in a reasonably safe condition.

We agree with the trial court in concluding the Hotel's request, in and of itself, does not create a special benefit to the Hotel. To conclude otherwise, would penalize any member of the public who petitions the government to take action, exposing the petitioner to potential liability and thus providing

---

[6] Nor does its patrons' use of the *public* crosswalk, consistent with the right of anyone to use it, result in any exclusive right to such use giving rise to an obligation to keep it in a reasonably safe condition. (*Ellsworth* v. *Colorado Beverage Company* (1962) 150 Colo. 19 [370 P. 2d 159, 160-161].)

[7] Indeed, we query whether the crosswalk constituted a defect of the roadway which was known to the Hotel, but not Seaber, and which caused his death. Absent any allegation he was unaware the crossing was upon a roadway heavily travelled by vehicular traffic, we presume he was aware of the ordinary danger of crossing such a highway, a peril neither latent nor concealed in character. (*Swett* v. *Village of Algonquin, supra*, 523 N.E.2d at p. 601.)

the governmental entity with the right of indemnification for its negligent conduct. A simple request of a governmental entity to take action does not relieve that entity from exercising its discretion with due care under the circumstances. Moreover, although the Hotel is an influential member of Coronado society as the scope of that influence is evident from the quick response of Cal Trans to its request, that request is not the equivalent of "control." Indeed, it is undisputed that Cal Trans had control over the crosswalk and was responsible for making all final decisions regarding it. It would be inequitable to impose a regulatory and maintenance duty on an entity without the authority to control use. (*Jones* v. *Halekulani Hotel, Inc.* (9th Cir. 1977) 557 F.2d 1308, 1311; *Laumann* v. *Plakakis* (1987) 84 N.C.App. 131 [351 S.E.2d 765, 767]; *State* v. *Flanigan* (Ind.Ct.App. 1986) 489 N.E.2d 1216, 1218; see also *MacLean* v. *Parkwood, Inc., supra*, 354 F.2d at p. 773.) It would be unfair to impose upon the Hotel a duty to maintain the public crosswalk in a reasonably safe condition simply because some of the Hotel's patrons may have used the crosswalk with its knowledge. (See *Brandt* v. *Great Atlantic & Pacific Tea Co.* (1951) 11 N.J. Super. 528 [78 A.2d 598, 599-600].) Consequently, we agree with the trial court that because the Hotel lacked effective control over the crosswalk, it cannot be shackled with a duty to warn pedestrians of the dangerous risk the crosswalk posed.[8]

Parenthetically, assuming but not granting there existed a feasible and effective method for the Hotel on its property to warn its guests, its employees and pedestrians in general of the dangerous nature of the crosswalk on its side of the street, we cannot envision anything further the Hotel could do to warn pedestrians approaching the Hotel from the other side of the street, other than by petitioning appropriate governmental authorities to make safe the crosswalk or the adjoining landowners to post adequate warnings on their property. For, just as a property owner has no duty to erect signs for the purpose of controlling or regulating traffic on adjacent public roads and may in fact be prohibited by law from doing so, similarly a landowner cannot be responsible for such signage controlling or regulating pedestrian traffic across public highways. (*Laumann* v. *Plakakis, supra*, 351 S.E.2d at p. 767; see *City of El Segundo* v. *Bright* (1990) 219 Cal.App.3d 1372, 1376-1377 [269 Cal.Rptr. 1]; *A. Teichert & Son, Inc.* v. *Superior Court* (1986) 179 Cal.App.3d 657, 663-664 [225 Cal.Rptr. 10]; *Nevarez* v. *Thriftimart, Inc., supra*, 7 Cal.App.3d at p. 805.)

## THE LIABILITY OF THE HOTEL HERE IS PRECLUDED AS A MATTER OF LAW

Finally, a review of the cited policy considerations persuades us that liability under these circumstances is unwarranted. Granted, the record

[8]Moreover, because the Hotel had no right to control the use of the crosswalk, the extent of its exercise of control would be presumably irrelevant unless that exercise created a dangerous condition. (*Jones* v. *Halekulani Hotel, Inc., supra*, 557 F.2d at p. 1311.)

suggests the crosswalk constituted a dangerous condition and that it was foreseeable harm could occur to a pedestrian using it for its designed purpose. Further, it is undisputed Seaber was killed while using the crosswalk for its designed purpose. However, presuming the Hotel had the right to do something, it is doubtful there exists any close connection between its omissions, given the limited availability of alternatives for action and their effectiveness under the circumstances, and the injuries suffered. Implicit in the absence of control is that the Hotel cannot be reasonably expected to take action where it is, in fact, powerless to do so. (*Donnell* v. *California Western School of Law, supra,* 200 Cal.App.3d at p. 728, dis. opn. of Wiener, J.) Further, the record is devoid of any indication the Hotel gratuitously assumed the safety of persons crossing the public street and failed to discharge that duty with due care. (*Laufenberg* v. *Golab* (1982) 108 Ill.App.3d 133 [438 N.E.2d 1238, 1241].) Additionally, because Cal Trans was the final decisionmaker as to the design and placement of the crosswalk, moral blame cannot be reasonably and fairly ascribed to the Hotel for merely petitioning appropriate governmental authorities to replace the crosswalk. Cal Trans had the duty to provide a *safe* crosswalk if it exercised its discretion to replace the prior one. Although expanding potential liability inevitably promotes the policy of preventing future harm, the extent of the burden to the Hotel and like commercial establishments to police and regulate public crosswalks adjacent to their property is onerous. We reiterate what protective measures could have been pursued by the Hotel to protect against risk involving the independent conduct of a third party under these circumstances defies exact delineation, especially where the Hotel's control was strictly limited to warning measures applied on its property.[9]

---

[9]The facts here are different than those considered in *Warrington* v. *Bird* (1985) 204 N.J.Super. 611 [499 A.2d 1026], where the appellate court recognized that liability may rest upon a restaurant for injuries suffered by patrons who were struck by a motor vehicle while crossing a county road which passed between the restaurant and its parking lot. The court there declared:

"We agree that the critical element should not be the question of the proprietor's control over the area to be traversed but rather the expectation of the invitee that safe passage will be afforded from the parking facility to the establishment to which they are invited. Commercial entrepreneurs know in providing the parking facility that their customers will travel a definite route to reach their premises. The benefitting proprietor should not be permitted to cause or ignore an unsafe condition in that route which it might reasonably remedy, whether the path leads along a sidewalk or across a roadway.

"Particularly with reference to the facts of the present case, the question of control of the roadway has little bearing. Testimony indicated that lighting placed upon the premises of the restaurant or parking lot might reasonably have illuminated the area and have made motorists more aware of pedestrians crossing the roadway to and from the restaurant and its parking lot. In addition, if the dangers reasonably required, a sign or flashing signal might have been erected on defendant's premises to alert both motorists and patrons of the dangers." (*Id.* at

## DISPOSITION

The judgment is affirmed.

Benke, J., and Rodriguez, J.,* concurred.

---

pp. 1029-1030.) Here, the Hotel neither owned the Glorietta Bay Inn parking lot nor provided it as a parking facility for its patrons.

*Judge of the San Diego Superior Court sitting under assignment by the Chairperson of the Judicial Council.