Filed 11/5/13  Mitchelson v. Sunset Marquis Hotel CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARCELLA MITCHELSON, | B241782 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC426618) |
| v. | |
| SUNSET MARQUIS HOTEL, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig D. Karlan, Judge.  Reversed.

Law Offices of the Pearman Law Corporation, Kim H. Pearman, Robert L. Pearman, Garo Hagopian and Miguel Muro for Plaintiff and Appellant.

Bradley & Gmelich, Jonathan A. Ross and Robert A. Crook for Defendant and Respondent.

_____

# INTRODUCTION

Plaintiff Marcella Mitchelson appeals from the judgment entered after the trial court granted defendant Sunset Marquis Hotel's motion for summary judgment. Mitchelson fell on a public sidewalk adjacent to the Hotel's property and filed this action for personal injuries. The Hotel filed a motion for summary judgment on the ground that it did not owe a duty to maintain the sidewalk because it did not own, control, maintain, or possess the area where Mitchelson fell. The Hotel also argued that the defect in the sidewalk was trivial as a matter of law. Because we conclude that the Hotel did not meet its burden on summary judgment of showing that Mitchelson could not prove the element of duty and that the defect is not trivial as a matter of law, we reverse.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *The Fall*

On the morning of June 17, 2008 Mitchelson tripped and fell as she was walking past the Hotel along Alta Loma Road in the City of West Hollywood (City). The day was clear, the ground was dry, and nothing obstructed her view as she walked on the sidewalk. Mitchelson was wearing walking shoes made by the Walking Company, which were in good condition, with low heels and rubber soles. Mitchelson did not fall on the property of the Hotel, but on a portion of the sidewalk that was located right in front of the entrance to the Hotel's underground parking garage. She did not recall seeing any defect in the sidewalk immediately after she fell. She was "lying . . . with shock."

Approximately one or possibly two months later, Mitchelson returned to the area of her fall and noticed a broken area of the sidewalk. She concluded that her right heel had become caught in it and this caused her to fall. Describing how she determined how she fell, Mitchelson stated: "I knew at the time that I fell that I had caught my heel in something but I wasn't exactly sure what at that time . . . . It was later that I went back and looked at the exact area where I fell and saw the hole in the sidewalk and the slant of

the sidewalk. [¶] . . . The combination of the hole that I caught my heel in and the change in the slant of the sidewalk taking away the wide flat sidewalk that I had been on in my opinion caused me to sustain this fall."

B.    *The Lawsuit*

Mitchelson filed this action in November 2009. Mitchelson alleged that the Hotel "negligently and carelessly altered the sidewalk directly in front of its parking garage at 1200 Alta Loma Road," thereby "causing a dangerous condition without a permit on which plaintiff fell causing her injuries and damages." Mitchelson alleged one cause of action for premises liability.

C.    *The Motion for Summary Judgment*

The Hotel moved for summary judgment or in the alternative for summary adjudication on grounds that it "did not own, control, operate, or maintain the premises where the incident occurred" or create the allegedly dangerous condition, and that "the defect in the pavement that caused [Mitchelson's] alleged injury was trivial." The Hotel did not move for summary judgment or adjudication on the issue of causation.[1]

The Hotel submitted the declaration of David Grimes, a land surveyor, who inspected the sidewalk where the accident occurred. He concluded that the area where Mitchelson fell was public property entirely within Alta Loma Road, and that no portion of the sidewalk was on the Hotel's property.

---

[1]    Although the Hotel's notice of motion stated that the Hotel was moving for summary adjudication on the issue of whether "the defect in the pavement that *caused* [Mitchelson's] alleged injury was trivial," the motion raised the issue of duty, not causation. (Italics added.) Whether a defect is trivial is an issue of duty (or perhaps breach), not causation. (See, e.g., *Cadam v. Somerset Gardens Townhouse* HOA (2011) 200 Cal.App.4th 383, 389 ["duty of care imposed on a property owner, even one with actual notice of a defect, does not require the repair of minor or trivial defects"]; *Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 566 ["law imposes no duty on landowner . . . to repair trivial defects"].)

3

The Hotel also submitted the declaration of Alan Keith Miller, a physicist, who stated that the specific area where Mitchelson fell consisted of a cut and filled area of concrete, which begins in the Hotel's driveway and extends fifteen and one-half inches into the public sidewalk from the east edge of the sidewalk. The broken part of the concrete sidewalk was located at a corner of the filled area on the public sidewalk, measuring two and three-fourths by five and one-half inches, which created a recess in the concrete.[2] Miller inspected the area of the sidewalk where Mitchelson fell and stated that he could not observe a raised lip within the recess. He opined that the sidewalk area was not a tripping hazard and that pedestrians wearing standard footwear would probably not feel the effect of the broken concrete as they walked over it.

To show that the Hotel had not created the change in the sidewalk or the displaced concrete, the Hotel submitted the testimony of several long-term employees, Mark Rosenthal (employed 26 years), Scott Benner (employed 14 years), and Brigitte Erbert (employed 20 years). All of these witnesses testified in their respective depositions that they had no knowledge of any alterations to the driveway or the surrounding area.

In opposition to the motion, Mitchelson argued that several factual issues precluded summary judgment. She argued that her fall was caused by a reconfiguration of the parking entrance apron, which was done for the benefit of the hotel and without permits. Mitchelson argued that the Hotel altered the grade of the driveway to prevent cars "bottoming out" as they entered the parking structure.

Mitchelson submitted the declaration of Richard Grossman, an engineer. Grossman determined that a 17-foot-long, 30-inch-wide section of concrete had been cut out of the driveway and replaced with the current flatter section in an attempt to reduce the height of the driveway, in order to prevent cars from bottoming out. Grossman based this conclusion on his inspection of the property, his observation that cars continued to bottom out when entering and exiting the garage, and his opinion that a permit would be

---

[2]     There is no evidence in the record of its exact depth.

4

required to make any modifications to the driveway when it expands out onto the public sidewalk.

Grossman also stated that "[w]here the driveway crosses the parkway, the driveway slopes up from the street, which would have been from Mrs. Mitchelson's left, at across [sic] slope of approximately 10.5%, and down to her right at a slope of approximately 13%. For reason[s] of safety it has long been standard practice . . . to limit the cross slope of sidewalks to a maximum of 2%." Grossman opined that although "the modification to the driveway included changes to public property, a permit was required," but there was no evidence that the City or the County had issued a permit. Grossman further stated that "in order to ensure that modifications made to the driveway complied with then existing design practices, the County or City would have required that that driveway be brought into compliance with the 2% maximum cross slope requirement, thereby eliminating a condition which caused or contributed significantly to Mrs. Mitchelson's accident." Grossman also concluded, without explanation, that the defect in the concrete was not trivial.

D.  *The Ruling*

The trial court recognized that the sidewalk had been altered from its original condition, and that because the change in the sidewalk matched up perfectly with the entrance to the Hotel's parking garage, it was a reasonable inference that the alteration was for the benefit of the Hotel or a prior owner or occupier of the property. Nevertheless, the trial court granted the Hotel's motion for summary judgment. The court found that it was undisputed that Mitchelson fell on a public sidewalk, and that the Hotel did not own, possess, or control the area where she fell. Relying on the uncontroverted testimony of Hotel employees, the court concluded that the Hotel did not create the condition of the sidewalk where Mitchelson fell. The trial court also determined that Mitchelson had not created a triable issue of material fact on the issue of whether the Hotel had created the allegedly dangerous condition for its benefit. The court also concluded that the defect was trivial as a matter of law. The court found that

5

Grossman's opinion to the contrary was insufficient to create a triable issue of fact because Grossman did not provide any evidentiary support for his opinion that the defect in the sides was not trivial.[3]

The trial court denied Mitchelson's motion for a new trial and entered judgment in favor of the Hotel.  Mitchelson filed a timely notice of appeal.

## DISCUSSION

A.    *Standard of Review*

"We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law.  [Citation.]" (*Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1301; see *King v. Wu* (2013) 218 Cal.App.4th 1211, 1213 [review of order granting summary adjudication is also de novo].)

"A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action.  (Code Civ. Proc., § 437c, subds. (*o*)(2), (p)(2).)  If the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of fact exists as to that cause of action or defense." (*Blue Shield of California Life & Health Ins. Co. v. Superior Court* (2011) 192 Cal.App.4th 727, 732.)  "If the defendant fails to meet this initial burden, it is unnecessary to examine the plaintiff's opposing evidence; the motion must be denied. [Citation.]" (*Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 805; accord, *Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 850; see *Hollingshead v. Matsen* (1995) 34 Cal.App.4th 525, 531 ["'[i]f the defendant does not satisfy its burden as the moving

---

**3**      The court sustained the Hotel's objections to the entirety of Grossman's declaration on grounds of lack of foundation and personal knowledge, relevance, speculation, and hearsay, but considered it anyway.

6

party, the motion must be denied, and it is unnecessary for the court to consider the plaintiff's opposition, if any'"].)


        B.      *The Hotel Failed To Meet Its Initial Burden on Summary Judgment That It Did Not Owe a Duty To Maintain the Area of the Sidewalk Where Mitchelson Fell.*

A defendant owning property adjacent to or abutting a sidewalk may be liable for injuries suffered by pedestrians walking on the sidewalk in at least three circumstances. First, the defendant may own, occupy, or control the land on which the sidewalk rests. (See *Alpert v. Villa Romano Homeowners Assn.* (2000) 81 Cal.App.4th 1320, 1334 ["landowner or possessor of land has a duty to take reasonable measures to protect persons from dangerous conditions on adjoining land when the landowner or possessor exercises possession or control over that adjacent land"]; *Seaber v. Hotel Del Coronado* (1991) 1 Cal.App.4th 481, 487 ["[g]enerally, absent statutory authority to the contrary, a landowner is under no duty to maintain in a safe condition a public street or sidewalk abutting upon his property"].) That is not the case here. The Hotel met its burden on summary judgment of showing that it did not own, occupy, or control the area of the sidewalk where Mitchelson fell. The Hotel submitted the declaration of a surveyor, Grimes, who inspected the area and concluded that the sidewalk lay entirely outside the property of the Hotel. Mitchelson did not submit any contrary evidence that would create a triable issue of fact.

Second, the defendant may make an alteration to the sidewalk or to the portion of the sidewalk where the accident occurred. (See *Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 846 ["a person who creates a dangerous condition on a public roadway or walkway is liable for foreseeable injuries caused thereby"]; *Seaber v. Hotel Del Coronado*, *supra*, 1 Cal.App.4th at p. 488 ["an abutting landowner has always had an obligation to refrain from affirmative conduct which results in a dangerous condition upon public streets or sidewalks"]; *Barton v. Capitol Market* (1943) 57 Cal.App.2d 516, 518 ["if the abutting owner by positive action creates a condition which is likely to cause

7

harm to persons lawfully using the sidewalk, and a person is injured as a proximate result thereof, the property owner is liable"].) That also is not the case here. The Hotel met its burden on summary judgment of showing that it did not create the condition of the sidewalk that caused Mitchelson to fall. The Hotel submitted the declarations of several long-term employees who had no recollection of any alternations to the sidewalk in front of the Hotel, the driveway leading to the Hotel's garage, or the surrounding area. Mitchelson did not submit any contrary evidence that would create a triable issue of fact.

Third, the property owned by the defendant may be the beneficiary of an alteration to the sidewalk, even an alteration performed by someone other than the property owner, that provides an exclusive benefit to the property. (*Peters v. City & County of San Francisco* (1953) 41 Cal.2d 419, 424.) "The rule is that an abutting landowner may be held liable for the dangerous condition of portions of the public sidewalk which have been altered or constructed for the benefit of his property and which serve a use independent of and apart from the ordinary and accustomed use for which sidewalks are designed." (*Id.* at p. 423; accord, *City & County of S. F. v. Ho Sing* (1958) 51 Cal.2d 127, 129; see *Seaber v. Hotel Del Coronado*, *supra*, 1 Cal.App.4th at p. 488 ["an abutting landowner who has altered an adjacent sidewalk for the benefit of his property apart from its ordinary use for which it was designed, has a duty to employ ordinary care in making such alteration and in maintaining that portion of the sidewalk in a reasonably safe condition"]; *Winston v. Hansell* (1958) 160 Cal.App.2d 570, 575 [an adjoining landowner may be liable "for defects created by special construction for the particular needs of the abutting property"].) "The duty to maintain portions of a sidewalk which have been altered for the benefit of the property runs with the land, and a property owner cannot avoid liability on the ground that the condition was created by or at the request of his predecessors in title. [Citation.]" (*Peters*, *supra*, at p. 423) This rule applies even "where the public sidewalk has been constructed or altered by the city in a particular manner for the special benefit of his property." (*Sexton v. Brooks* (1952) 39 Cal.2d 153, 157-158.)

8

The Hotel did not meet its burden on summary judgment of showing that it was not the beneficiary of an alteration of the sidewalk, nor did the Hotel present any argument on this issue in its motion for summary judgment. The photographic exhibits attached to the motion showed that the altered portion of the sidewalk matches up exactly with the entrance to the driveway and can have no other logical or functional purpose other than one relating to the driveway. The photographs showed that the alteration cannot have been for anyone's benefit other than the Hotel property. The Hotel does not argue otherwise.

The trial court noted, "[i]t's clear there was a cut there." The court stated: "I can see there was a modification. I 100 percent agree with you [counsel for plaintiff]. . . . I can see a cut [in the cement sidewalk]. The defense has to concede they see a cut." The trial court, however, focused on the issues of who made the alteration and when it was made. The trial court stated that "ultimately it comes down to we don't know who made the modification even though I don't think it's outrageous to speculate that the Hotel did it or somebody did it for the Hotel. But why couldn't the county have done it for the Hotel?" The court added, "The real issue is I don't have any idea when that cut was made. For all I know, it was done 50 years ago. I don't have any idea. Nobody knows because the earliest evidence we have is [that] it was there in '84." The trial court stated in its final ruling, "there is nothing to show that the [Hotel], versus the [City], made any changes to the sidewalk area in question."

The trial court focused on the wrong issues. As noted above, it does not matter whether the Hotel, the prior owner of the property, or even the City performed the alteration in the sidewalk.[4] Nor does it matter when the alteration occurred. If the

---

[4] We note, however, that the evidence creates a strong inference that an owner of the property, and not a municipality, altered the sidewalk. The trial court in its ruling cited the testimony of City Engineer Sharon Perlstein that the City has "no record of any alteration to the pavement on either side of the property line." Grossman noted in his deposition that the County of Los Angeles, in whose jurisdiction the property was located prior to the City's incorporation in 1984, also had no record of a permit authorizing alteration or modification of the sidewalk.

9

alteration benefits the property, which the trial court seemed to believe it did, then the abutting landowner can be liable for the defect if it does not reasonably maintain the property. (See *Peters v. City & County of San Francisco*, *supra*, 41 Cal.2d at p. 423; *Sexton v. Brooks*, *supra*, 39 Cal.2d at pp. 157-158; *Seaber v. Hotel Del Coronado*, *supra*, 1 Cal.App.4th at p. 488.) The issue is not *who* did the construction work for the alteration or *when* it occurred, but *whether* the alteration benefitted the property, and the Hotel did not introduce any evidence that the alteration did not. To the contrary, the photographic evidence submitted by the Hotel shows, at a minimum, that the alteration benefitted the Hotel.

Although not argued by the Hotel, it is true that "liability under this theory does not arise upon a mere finding that the abutting owner derives a benefit from the alteration. The additional factors of whether the alteration serves a use independent of and apart from the ordinary and accustomed use of the sidewalk and the degree of exclusivity of such use must be considered." (*Contreras v. Anderson* (1997) 59 Cal.App.4th 188, 202.) Here, however, the alteration of the driveway into the Hotel's parking garage has nothing to do with the "ordinary and accustomed use of the sidewalk," and everything to do with assisting cars getting in and out of the Hotel. (*Ibid.*; cf. *Winston v. Hansell*, *supra*, 160 Cal.App.2d at pp. 576-577 [no use independent of "ordinary and accustomed uses for which sidewalks are designed" where there was "no allegation that the sidewalk was specially constructed or altered to meet some peculiar need of the abutting property" and the only claim was that "the sidewalk was used as a driveway by the abutting owners"].)[5] The alteration helped cars drive into the hotel; it only hindered pedestrians in the safe passage on the sidewalk. The Hotel does not contend that modified sidewalk assisted pedestrians enter or walk past the hotel.

---

[5] "In the *Winston* case the only allegation to connect the defendant with the defective sidewalk was that defendant had used the sidewalk as a driveway, not that such use was responsible for the condition. Obviously, the use of a sidewalk as a driveway is as much intended as its use as a walkway." (*Kopfinger v. Grand Central Pub. Market* (1964) 60 Cal.2d 852, 859.)

10

C.     *The Defect Is Not Trivial*

The trial court found that the defect in the sidewalk was trivial as a matter of law. We cannot see how a defect of this size and with these characteristics can be a trivial defect. Trivial defect cases generally involve defects that are fractions of an inch. (See, e.g., *Barrett v. City of Claremont* (1953) 41 Cal.2d 70, 72, 74 [ridge of asphalt rising "about 1/2 inch above the surface of the sidewalk"]; *Cadam v. Somerset Gardens Townhouse HOA*, *supra*, 200 Cal.App.4th at p. 389 [walkway separation between 3/4 and 7/8 inch deep]; *Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 927 [sidewalk crack less than 1/2 inch deep]; *Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394, 396 [raised edge 3/4 inch high]; *Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 724, fn. 4 [collecting trivial defect cases involving defects ranging from 1/2 inch to 1-1/2 inches].) In *Stathoulis v. City of Montebello*, *supra*, 164 Cal.App.4th at p. 568 the defect, a "gouge mark," was up to one inch deep, but the court reversed an order granting summary judgment on the ground that the defect was trivial. The *Stathoulis* court stated, after collecting trivial defect cases from less than half an inch up to one and one-half inches, "that as 'the size of the depression begins to stretch beyond one inch the courts have been reluctant to find that the defect is not dangerous as a matter of law.' [Citation.] Moreover, size alone is not determinative of whether a rut presents a dangerous condition." (*Id*. at p. 568.)

The defect here was two and three-fourths by five and one-half inches, far beyond the one-inch reluctance threshold referenced by the *Stathoulis* court. The Hotel has not cited any case where a defect of this size was trivial, and we have found none. Holding a defect of this size trivial as a matter of law would be an outlier in this area of the law.

In addition, size is not the only factor. "We must also consider the nature and quality of the defect, the time of day and lighting conditions when the accident occurred, and whether there is evidence anyone else has been injured by the same defect. [Citation.]" (*Stathoulis v. City of Montebello*, *supra*, 164 Cal.App.4th at p. 568.) Although the Hotel did not submit evidence of the defect's depth, and there was no evidence of any other injuries at the location, the nature and quality of the defect weigh

11

against a finding of legal triviality. The photographs submitted by the Hotel with its motion for summary judgment show that the defect is not a tiny hole or a small nail, nor is it a minor chip in the pavement. The defect is a relatively large, dislodged, two and three-fourths by five and one-half-inch broken chunk of cement resting in what Miller called a "recess." It is in the center of the right half of the sidewalk where pedestrians are likely to walk, on the edge of the slope into the Hotel's driveway created by the alteration. (See *Stathoulis*, *supra*, at p. 567 ["'[a]side from the size of the defect, the court should consider whether the walkway had any broken pieces or jagged edges and other conditions of the walkway surrounding the defect'"]; *Kasparian v. AvalonBay Communities, Inc.* (2007) 156 Cal.App.4th 11, 27 ["'the court should view the intrinsic nature and quality of the defect to see if, for example, it consists of the mere nonalignment of two horizontal slabs or whether it consists of a jagged and deep hole'"; defect of 5/16 inch or less not trivial]; *Dolquist v. City of Bellflower* (1987) 196 Cal.App.3d 261, 268 ["application of a strict tape measure approach to determine whether a defect is trivial as a matter of law, disregards the fact that other factors and circumstances involved in a particular case could very well result in an entirely different conclusion from one arrived at by simply measuring the size of a defect"; 1/4 inch defect not trivial].) The Hotel did not meet its burden of establishing that the defect was trivial as a matter of law.[6]

---

[6] The conclusion of whether the trivial defect doctrine applies is a matter of law for the court, not for an expert. (See *Stathoulis v. City of Montebello*, *supra*, 164 Cal.App.4th at p. 567 [trivial defect doctrine "permits a court to determine whether a defect is trivial as a matter of law, rather than submitting the question to a jury"]; *Ursino v. Big Boy Restaurants*, *supra*, 192 Cal.App.3d at p. 399 [trivial defect rule "permits a court to determine 'triviality' as a matter of law"].) Thus, the expert witnesses' conclusions in their respective declarations that the defect was and was not trivial are not determinative. (See *Burton v. Sanner* (2012) 207 Cal.App.4th 12, 20-21 [expert opinion not admissible when it "'amounts to nothing more than an expression of his or her belief on how a case should be decided'"]; *WRI Opportunity Loans II, LLC v. Cooper* (2007) 154 Cal.App.4th 525, 532, fn. 3 ["'"manner in which the law should apply to particular facts is a legal question and is not subject to expert opinion"'"]; *Summers v. A.L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1178 ["[t]here are limits to expert testimony, not least

**DISPOSITION**

The judgment is reversed.  Mitchelson is to recover her costs on appeal.


SEGAL, J.[*]


We concur:


WOODS, Acting P. J.


ZELON, J.

---

of which is the prohibition against admission of an expert's opinion on a question of law"]; *Staten v. Superior Court* (1996) 45 Cal.App.4th 1628, 1634-1637 [expert opinion inadmissible on questions of law to be decided by trial court].)

[*]	Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.