RAYE, P. J.,
Dissenting.—Respectfully, I dissent.
Aleksandr Vasilenko was hit by a car while attempting to cross five lanes of traffic on Marconi Avenue as he made his way to a function at defendant Grace Family Church (GFC or the church). He was leaving the Debbie Meyer Swim School parking lot, which had been made available to the church as an overflow parking lot when the church lot became full. Though he could have crossed at the nearest intersection, he chose instead to cross in the middle of the block.
Vasilenko’s injuries were serious. It is tragic that he received them while on a spiritual mission.
There is no doubt that, as with any mishap caused by human activity, this tragedy could have been averted. Busy boulevards are dangerous places for pedestrians to be, particularly when crossing in the middle of a block. Any number of precautions to mitigate the risk of injury can be imagined. However, the rules of tort liability do not focus on what a plaintiff has suffered, considered in isolation, but on the relationship between what the plaintiff has suffered and what the defendant has done or failed to do. (See generally Ripstein, The Division of Responsibility and the Law of Tort (2004) 72 Fordham L.Rev. 1811.) The dispositive issue is one of duty. There is no duty to eliminate all possible risk in every human endeavor. Citing various authorities, the majority concludes that the location of the overflow lot, which required users of the parking lot to cross Marconi Avenue without benefit of a crosswalk or traffic signal, gave “rise to a duty on the part of GFC,” the precise contours of which are not disclosed. (Maj. opn., ante, at p. 149.) The cited authorities are inapposite and the conclusion incorrect.
*160 The majority recognizes that “[tjhose who own, possess, or control property generally have a duty to exercise ordinary care in managing the property in order to avoid exposing others to an unreasonable risk of harm. [¶] . . . [¶] [But i]n most instances, where there is no control over the premises, there is no duty to exercise reasonable care to prevent injury. . . . Generally, ‘a landowner has no right to control and manage premises owned by another.’ . . . Thus, usually a landowner has no duty to prevent injury on adjacent property[, and sjimilarly, an adjacent landowner has no duty to warn of dangers outside of his or her property if the owner did not create the danger.” (Annocki v. Peterson Enterprises, LLC (2014) 232 Cal.App.4th 32, 37 [180 Cal.Rptr.3d 474], citations omitted.)
But there are exceptions to these general principles and the majority opinion offers Barnes v. Black (1999) 71 Cal.App.4th 1473 [84 Cal.Rptr.2d 634] (Barnes) and Bonanno v. Central Contra Costa Transit Authority (2003) 30 Cal.4th 139 [132 Cal.Rptr.2d 341, 65 P.3d 807] {Bonanno) as prime examples, discussing them at length while dismissing Steinmetz v. Stockton City Chamber of Commerce (1985) 169 Cal.App.3d 1142 [214 Cal.Rptr. 405] (Steinmetz) and Seaber v. Hotel Del Coronado (1991) 1 Cal.App.4th 481 [2 Cal.Rptr.2d 405] (Seaber) as contrary distinguishable authority.
I am not persuaded that our case is analogous to Barnes or Bonanno. As for Seaber and Steinmetz, I agree they can be distinguished from this present case factually, but Seaber articulates principles of law that are controlling in the present case.
In Barnes, the sidewalk in an apartment complex, which provided passage to a children’s play area, adjoined a driveway that sloped steeply downward to a busy street. The plaintiffs’ decedent was riding his ‘“big wheel” tricycle along the sidewalk when the child lost control and rolled down the steep driveway into busy traffic; he was struck by a car and killed. (Barnes, supra, 71 Cal.App.4th at p. 1476.) As here, the defendant argued that he had no duty to protect his tenants from ‘“unreasonable risk of injury off the premises on a public street over which [he] ha[d] no control.” {Id. at p. 1478.) The Court of Appeal properly rejected this argument, concluding that ‘“the duty of care encompasses a duty to avoid exposing persons to risks of injury that occur off site if the landowner’s property is maintained in such a manner as to expose persons to an unreasonable risk of injury offsite.” (Ibid.) It was not the mere location of the property adjacent to a busy street that gave rise to the duty recognized in Barnes. It was how the property was maintained: the construction of a sidewalk used by children to access a play area, adjacent to a driveway that sloped down to a busy street. In our case, defendant performed no maintenance and made no improvements or alterations to the property that increased the risk beyond the risk posed by its location next to a busy street.
*161 At first glance, Bonanno, supra, 30 Cal.4th 139 seems like a more compelling case. But the factual distinctions are clear. Bonanno truly involved a dangerous condition of public property. The court framed the issue in Bonanno thusly: “Under [Government Code] section 835, a public enhty such as [the Central Contra Costa Transit Authority] is ‘liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and [that]: [¶] . . . [¶] (b) [t]he public entity had actual or constructive nohce of the dangerous condition under [Government Code] Sechon 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.’ At this stage of the proceedings, the only element at issue is the existence of a dangerous condition of the property.” (Bonanno, supra, 30 Cal.4th at p. 146.)
In Bonanno, the defendant erected a bus stop that could only be reached by crossing a dangerous crosswalk. As the court noted, “Our order limiting review . . . assumes the existence of a dangerous crosswalk, posing only the question whether a bus stop may be deemed dangerous because bus users, to reach the stop, must cross at that dangerous crosswalk.” (Bonanno, supra, 30 Cal.4th at p. 147.) Here, defendant erected nothing and there is nothing to suggest the parking lot was dangerous. Defendant simply made its parishioners aware of nearby parking and provided attendants to facilitate the positioning of their cars within the facility.[1] The danger asserted by plaintiffs was not in entering the property but in leaving it to cross Marconi Avenue, a dangerous street if not crossed with care.
As the majority notes, the court in Seaber applied this general rule: “ ‘The courts . . . have consistently refused to recognize a duty to persons injured in adjacent streets or parking lots over which the defendant does not have the right of possession, management and control.’ ” (Seaber, supra, 1 Cal.App.4th at p. 489.) Furthermore, a landowner cannot be responsible for controlling or regulating pedestrian traffic across public streets. A landowner has no duty to warn of dangers beyond its own property when the owner did not create those dangers. The majority distinguishes Seaber thusly: “Here, unlike Seaber, GFC created the danger by maintaining the overflow lot in a locahon that required invitees to cross a busy thoroughfare that it knew lacked a crosswalk or traffic signal in order to reach the church.” (Maj. opn., ante, at p. 157.)
Truly, this is a distinction without a difference.
*162 In Seaber, the entrance to the defendant hotel was located adjacent to a busy intersection. The hotel recognized the danger and implored the California Department of Transportation (Caltrans) to install a traffic control device, but Caltrans chose instead to provide a painted crosswalk. However, the issue in Seaber was not whether the hotel acted reasonably, but whether the hotel had a duty at all given that the allegedly dangerous crosswalk, though adjacent to the hotel, was owned by the State of California, and in light of the rule that the hotel owed no duty “ ‘to persons injured in adjacent streets ....’” (Seaber, supra, 1 Cal.App.4th at p. 489.) The plaintiffs sought to bring their case within the “special benefit” exception to the general rule by showing the dangerous crosswalk was constructed abutting the hotel at the hotel’s request and for its benefit (id. at p. 490), but the court rejected the attempt.
So it is not enough to say that the church created the danger by using a lot next to a busy street over which people needed to cross, any more than the hotel created the danger by establishing its entrance next to a dangerous crosswalk. While Seaber is distinguishable—the “special benefit” exception is not involved in our case—the case is nonetheless noteworthy for its reaffirmation of the general rule that landowners owe no duty to prevent injury on adjacent property and for its explanation of the exceptions to the rule, where the management of property has increased the risk presented by the property’s location. As expressed by the court, “[ajlthough the scope of premises liability has greatly expanded over the past decade and a half, liability has been restricted within the context of landowners whose property abuts public sidewalks and streets. For, it cannot be ignored that premises liability is predicated upon the concept that possession includes the attendant right to manage and control, justifying liability when one has failed to exercise due care in property management.” (Seaber, supra, 1 Cal.App.4th at p. 489.) It was the property owner’s management of the properties involved in the Bonanno and Barnes cases that led to imposition of a duty and consequent liability.
Here, the church was not a property manager. The swim school merely gave permission to the church’s members to park there. Unlike the poorly designed sidewalk in the Barnes case, no features of the swim school parking lot had been altered by the church. The church did nothing to increase the risk posed by adjacent property over which neither it nor the swim club exercised control.
Finally, it is worth noting that parking lots servicing a multiplicity of businesses are frequently located next to busy streets. More will be built in the future as metropolitan areas become increasingly congested. The safety of streets and crosswalks has never been the responsibility of parking lot *163 operators or businesses that rely on such parking lots; it is the responsibility of those who maintain the streets and those who choose to cross them. There is no compelling reason to refashion the rules of premises liability or principles of negligence to impose a duty on parking lot operators or owners of land adjacent to busy thoroughfares to guarantee the safety of pedestrians who cross such roadways.
I would affirm.
Respondent’s petition for review by the Supreme Court was granted September 21, 2016, S235412.

 It is not cleai' under plaintiffs’ theory whether liability would attach had the swim club simply posted signs or distributed flyers declaring “church parking welcome.”