Filed 6/23/26  Tamayo v. The Vons Companies CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT
### DIVISION FOUR

| | |
|---|---|
| MARY ANN TAMAYO, et al., | B347298 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 23VECV04179) |
| v. | |
| THE VONS COMPANIES, INC., | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on June 4, 2026, be modified as follows:

1. In the caption change "Mary Ann Tamayo, Plaintiff and Appellant" to "Mary Ann Tamayo, et al., Plaintiffs and Appellants"

2. In the caption delete "ALBERTSONS COMPANIES, INC. et al., and replace with THE VONS COMPANIES, INC.

3. On page 16, at footnote 8 in the sentence that begins "As Vons correctly points out" delete the phrase "there is no evidence regarding the nature of the item dropped"

The petition for rehearing is denied.

ZUKN, P. J.          MORI, J.          COGLIATI, J.*

\*     Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 6/4/26  Tamayo v. Albertsons Companies CA2/4 (unmodified opinion)
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARY ANN TAMAYO,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>ALBERTSONS COMPANIES, INC. et al.,<br><br>        Defendants and Respondents. | B347298<br><br>(Los Angeles County<br> Super. Ct. No. 23VECV04179) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Wendy L. Wilcox, Judge.  Affirmed.

        Impact Attorneys, Ellery S. Gordon, Shawn Gleizer and Nima Bencohen for Plaintiff and Appellant.

        Stone Dean, Gregory E. Stone and Kori N. Macksoud for Defendants and Respondents.

**INTRODUCTION**

Mary Ann Tamayo was injured in a slip-and-fall in a parking lot outside a Vons supermarket while holding her toddler son, Zayden Ramirez.[1] Tamayo, Zayden, and Tamayo's husband sued The Vons Companies, Inc., and the landlord of the shopping center, Combined Properties, Inc. (CPI), for negligence and premises liability. Vons moved for summary judgment on the grounds that it leased only its store premises, and it did not possess or control the parking lot outside where Tamayo fell. The trial court granted Vons's motion, and plaintiffs appealed.

We affirm. The evidence presented showed that CPI and its agent controlled the cleaning and maintenance of the parking lot where Tamayo fell. Vons's incidental use of the parking lot, including shopping cart collection and occasional cleaning, did not rise to the level of "control" of the parking lot.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Complaint**

On September 19, 2023, Tamayo was walking in the parking lot of a shopping center in Reseda, carrying her two-year-old son, Zayden. As she walked across a marked crosswalk toward the entrance door to a Vons grocery store, Tamayo fell to the ground. Tamayo's patella (kneecap) broke, and Zayden hit his head.

The following day, plaintiffs filed a complaint against Vons, CPI, and others. The first amended complaint (FAC) was operative at the time of the motion for summary judgment, so we focus on the allegations in that version of the pleadings.

---

[1]      We refer to Zayden by his first name to avoid confusion.

Plaintiffs alleged that as Tamayo approached the Vons entrance door, she "slipped on an unknown, slimy food substance, believed to be yogurt or some other substance with similar consistency." Tamayo "sustained a comminuted fracture of her left patella that now requires surgical repair."

Plaintiffs alleged that defendants failed to properly "maintain, inspect, repair, operate, secure, and control the Premises, which caused the hazard and dangerous condition" in the crosswalk. Plaintiffs further alleged that defendants knew or should have known that "the hazard posed a probable threat of danger and harm to customers and guests . . . who could reasonably be expected walk into the Premises through the front doors." They asserted that defendants' failure "to mark, remove, warn, advise, or otherwise notify persons" of the dangerous condition constituted negligence.

The FAC alleged that security camera footage showed "an unidentified individual exiting the Vons grocery store and accidentally dropping a container filled with an unknown substance on the pedestrian crosswalk just outside the store's entrance." The person re-entered the store, returned to the entrance doors with Vons supervisor David Fair, and "pointed out the spill to David Fair before leaving the premises. David Fair briefly inspected the spill at 11:30:41 a.m. as captured by security cameras, then promptly returned inside the store." Fair did nothing to clean the spill or warn others about it, and another employee, Josephlin Portillo, also passed through the area and did not address the spill. Tamayo then slipped at 11:34 a.m.

Plaintiffs alleged four causes of action: premises liability, negligence, negligent hiring or supervision, and loss of

3

consortium. They sought actual damages, punitive damages, and costs of suit.

Vons cross-complained against the landlord of the property, CPI. In its cross-complaint, Vons alleged that it leased its store from CPI, and that according to the lease CPI "shall at all times maintain the public area in a neat, clean and attractive condition and in good repair." The "public area" included the parking lot.

CPI cross-complained against Common Area Maintenance Services, Inc. (CAM), the company CPI contracted with to clean and maintain the common areas of the property. CPI alleged that the contract between CPI and CAM required CAM to "'remove all observable trash and debris from the ground, including the storefront walkways[ and] the parking areas," and to "damp mop" spills on walkways and in the parking lot.

## B. Vons's motion for summary judgment

### 1. *Motion*

Vons filed a motion for summary judgment, asserting that "undisputed material facts establish that Plaintiffs' causes of action against Vons are barred because Vons did not own, lease, possess or control the parking lot at issue in the instant litigation and therefore owed no duty of care to Plaintiffs as it relates to the alleged incident." Vons submitted evidence that CPI controls the parking lot, and that Vons does not own or control the parking lot. Vons submitted as an exhibit what it called the "operative lease agreement." The exhibit included the original lease of the premises from 1956, and several subsequent amendments to the lease; the latest amendment was the "Fifth Lease Modification Agreement" signed in 2016. The original lease stated that the

parking lot was a "public area" controlled by the landlord.[2]  Each of the short amendments provided that unless otherwise stated, the original lease terms remained in effect.  None of the amendments changed the parties' responsibilities with respect to the parking lot.

Vons further asserted that CPI and CAM had a contract under which CAM was required to remove "all observable trash and debris from the ground, including the storefront walkways, parking areas and damp mopping spills and stains on the sidewalks and common areas."  Vons submitted an attorney declaration and CPI's cross-complaint against CAM in support of this contention.

Vons argued that because it did not own, lease, possess, or control the parking lot where Tamayo fell, it could not be liable under a negligence or premises liability theory.  Vons asserted that because it did not have a duty to keep the parking lot clean, it could not have breached that duty by failing to clean up the alleged spill.

Vons also argued that plaintiffs could not establish a triable issue of material fact as to punitive damages.  It acknowledged that according to surveillance footage of the entrance door from a camera inside the store, it appeared that an unknown individual dropped something in the crosswalk several minutes before Tamayo slipped, then picked the item up and walked back inside.  Vons asserted there was "no evidence

---

[2]     In a deposition submitted by plaintiffs with their opposition, Brian Miller, the person most qualified for CPI, testified that the shopping center also included a Big 5, O'Reilly's Auto Parts, Pizza Hut, Starbucks, Subway, Carl's Jr., Dollar Tree, a nail salon, and additional "services and clothing stores."

beyond speculation" that the dropped item spilled anything, or that the unknown person told Fair that something spilled. In his deposition, Fair denied being notified of any spill. He testified that the unknown person in the video "didn't tell me anything," and "did not point anything out to me." Portillo, a Vons employee who was returning carts to the front of the store in the video, also testified that she did not see any spill. Vons noted that in the four minutes between the time the person dropped something in the crosswalk and Tamayo's fall, 13 vehicles and multiple pedestrians passed over that portion of the crosswalk.

Vons asserted that plaintiffs could not prove by clear and convincing evidence that any Vons officer, director, or managing agent had relevant knowledge or was guilty of oppression, fraud, or malice. Although plaintiffs alleged that Fair and Portillo knew or should have known about the alleged spill, neither employee was a managing agent.

2. *Opposition and reply*

Plaintiffs opposed Vons's motion. They argued that even if Vons did not lease the area where Tamayo fell, it was nevertheless liable because it exercised "control" over the parking lot.

Plaintiffs submitted Tamayo's deposition,[3] in which she testified that she was walking when she slipped, lost her balance, and fell. She never saw a substance on the ground, but noticed after the incident that something had stained her pants. Tamayo testified that she did not know what the substance was. Tamayo called her husband, Ramirez, after she fell. He came to the store and filled out a Vons incident report stating that Tamayo slipped

---

[3] Defendants also submitted Tamayo's deposition.

6

on something that "looks like yogurt – slimy substance" in the crosswalk.

Plaintiffs also submitted the video of the incident. The video is from a camera inside the store recording the entrance door. Outside the door is a sidewalk, and beyond the sidewalk is a parking lot, which includes the stripe-painted crosswalk where Tamayo fell. At 11:29 a.m., a person exits the store, walks across the sidewalk into the crosswalk, and abruptly stops in the crosswalk. The person looks down. The area around the person's feet is not visible because it is blocked by a row of shopping carts being collected by Portillo. The person bends down, picks something up, and walks back into the store. The video is not clear enough to see what the person is holding. At 11:30, the person appears back in the video frame, and Fair meets the person at the doorway from a different direction. The two appear to talk briefly (six to eight seconds) while standing just inside the entrance door. Fair then walks out of the frame, and the unknown person exits the store again.

After the dropping incident, 13 or 14 cars drive over the portion of the crosswalk where something was dropped. Multiple people also walk through the area, including customers and Portillo as she collects shopping carts. No discoloration or debris is visible in the crosswalk, although the video is somewhat grainy and visibility is limited. At 11:34 Tamayo comes into the frame, holding Zayden as she walks across the painted crosswalk toward the store entrance. When Tamayo is a few feet away from the sidewalk outside the entrance, in the same area the unknown person dropped something, she and Zayden fall forward and sideways. They remain lying on the ground as people come to them. Employees bring a chair outside, move Zayden onto the

sidewalk, put carts around Tamayo as she remains in the traffic lane, and eventually help Tamayo onto the chair.

In their opposition to the motion for summary judgment, plaintiffs argued that Vons exercised control over the parking lot because it was responsible for managing shopping carts in the parking lot, it designated parking spaces for pickup orders, it had a video camera pointed at the location where Tamayo fell, and Vons employees "secured the area" after Tamayo fell.  Plaintiffs also asserted that because the parking lot was used for "ingress and egress," "Vons can reasonably expect that its customers would use the painted crosswalk leading to the front entrance of the store and had a duty to maintain it in a safe condition."  They further asserted that Vons's policies and procedures obligated employees to clean up spills in the crosswalk in front of the store. Plaintiffs argued that because Vons had control over the area, it had a legal duty to warn Tamayo about any hazards. Plaintiffs further asserted that Vons had notice of the hazard, because the unknown person informed Fair about it.

Plaintiffs also contended there was a triable issue as to punitive damages, because Vons ratified Fair's conduct. Plaintiffs argued that it was "undisputed" that Fair "had notice of the hazard," and there was "zero evidence on the record that Vons disciplined Fair because of his conscious disregard of the hazard."

Plaintiffs submitted the deposition of store manager Liliana Hernandez as Vons's person most knowledgeable about the incident.  Hernandez testified that Vons has protocols about cleaning spills and placing warnings about any hazards inside the store.  Hernandez testified that outside the store, employees cleaned shopping carts and the cart corral, but "[o]ther than that,

8

that's something that property management . . . needs to take care of." She also testified that if she were made aware of a spill outside near the store entrance, she would try to warn customers or cover it with paper towels, depending on the nature of the spill. Hernandez testified that the day Tamayo fell, no one brought a spill to her attention.

Plaintiffs filed written objections with their opposition. A single objection is relevant on appeal: Plaintiffs asserted that CPI's person most qualified, Brian Miller, testified that the sixth amendment to the lease was operative at the time Tamayo fell, but Vons did not submit that amendment with its motion.[4] In the portion of the deposition plaintiffs cited, Miller acknowledged the existence of a sixth amendment to the lease, and agreed that each amendment referred back to the 1956 lease agreement. He did not testify about the operative date of the sixth amendment. When asked if the sixth amendment had an impact on "the ability of Vons and their customers or guests to use the parking lot," Miller responded, "Not to my knowledge."

Vons filed a reply in support of its motion. In its reply separate statement, Vons stated that it was undisputed that the sixth amendment to the lease was in effect on the date of the incident.

3. *Ruling and judgment*

At the hearing on the motion, the court gave an oral tentative ruling. The court stated that Vons met its initial summary judgment burden by showing that Vons did not owe a duty to plaintiffs because it did not own or control the parking lot. The court also tentatively found that plaintiffs failed to raise

---

[4] As noted above, the lease Vons submitted included the fifth amendment.

9

a triable issue of material fact, noting that the lease agreement required other entities—CPI and CAM—to maintain the public areas including the parking lot.

The parties argued their respective positions.  The court did not explicitly state a final ruling, but asked Vons to submit a proposed judgment.  The judgment, signed by the court on May 20, 2025, stated that Vons "owed no duty of care to plaintiffs in this instance as [Vons] did not exercise control over the subject parking lot property and crosswalk.  The operative Lease Agreement establishes that [Vons] does not own or lease the parking lot premises, and [Vons] has no duty to maintain, inspect or repair the parking lot under the express terms of the operative Lease Agreement.  [¶]  As there was no duty owed to plaintiffs by [Vons], all of the causes of action contained in plaintiffs' First Amended Complaint, as well as plaintiffs' plea for punitive damages, fail as a matter of law."

Plaintiffs timely appealed.

## DISCUSSION

Plaintiffs contend the trial court erred in granting Vons's summary judgment motion. A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established."  (Code Civ. Proc., § 437c, subd. (p)(2).)  The moving defendant "'bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact'"; if the defendant carries this burden of production, it "'causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact.'"  (*LAOSD Asbestos Cases* (2023) 87 Cal.App.5th 939, 945, quoting *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826,

10

850.) Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

"On appeal from a summary judgment, we review the record de novo to determine whether triable issues of material fact exist." (*Carver v. Volkswagen Group of America, Inc*. (2024) 107 Cal.App.5th 864, 877.) We also review de novo the "specific legal question of whether a defendant owes a plaintiff a duty of care." (*Hu v. XPO Logistics, LLC* (2026) 117 Cal.App.5th 1197, 1206.) We do so by "viewing the evidence in the light most favorable to the plaintiff as the losing party and resolving any evidentiary doubts or ambiguities in [the plaintiff's] favor." (*Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 620.) "[A] party 'cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact.'" (*Dollinger DeAnza Associates v. Chicago Title Ins. Co.* (2011) 199 Cal.App.4th 1132, 1144-1145.)

## A. Plaintiffs' objection to the lease agreement

First we address plaintiffs' evidentiary argument that the trial court erred by relying on an "undisputedly non-operative version of the lease agreement." They contend the sixth amendment to the lease was operative at the time of the incident, but because Vons did not submit it to the court in support of its motion, the court relied upon the outdated fifth amendment. Plaintiffs argue that Vons therefore failed to meet its burden to show that it did not control the parking lot according to the lease, and the trial court erred in relying on the non-operative lease in granting the motion for summary judgment.

11

Plaintiffs note that they objected to the outdated lease in their evidentiary objections submitted with their opposition, but the court did not rule on their objections.[5] We presume the objection was overruled (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534), and review that ruling under an abuse of discretion standard. (*LAOSD Asbestos Cases, supra*, 87 Cal.App.5th at p. 946.)

The sixth amendment to the lease is not in the record on appeal, and information about it is inconsistent. In their opposition separate statement, plaintiffs asserted that the sixth amendment to the lease was operative at the time of the incident. In response, Vons stated, "Undisputed."[6] Plaintiffs contend Miller testified that the sixth amendment to the lease was

---

[5] Below, plaintiffs objected to Vons's attorney's declaration attaching the lease as an exhibit on the grounds that it lacked foundation, assumed facts not in evidence, misstated the evidence, and offered an improper legal conclusion. Plaintiffs do not assert an evidentiary basis for their objection to this evidence in their opening brief, but in their reply brief on appeal, they assert for the first time that Miller's testimony is barred by the secondary evidence rule in Evidence Code section 1521. In general, points raised in a reply brief for the first time are deemed forfeited, unless good reason is shown for failure to present them earlier. (*Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1115.) Plaintiffs have not offered a reason for failing to assert this argument earlier, and therefore the contention is forfeited.

[6] On appeal, Vons asserts that this statement was erroneous because "[b]y its own terms, the Sixth Amendment (executed in 2023) does not extend the lease term or go into effect until January 1, 2026." Vons does not support this statement with any citation to the record.

operative at the time of the incident. This is not accurate. During Miller's deposition, plaintiffs' counsel asked him about the sixth amendment to the lease. At one point in the deposition Miller said he had not reviewed it, and at another point he said he had. However, Miller did not testify about the operative dates of the amendment. He did testify that the sixth amendment refers back to the 1956 lease, and as far as he was aware, the sixth amendment had no impact on the ability of Vons and its guests to use the parking lot.

Vons argues that no matter which amendment was operable at the time of Tamayo's fall, the "original base lease" from 1956—a 47-page document submitted with Vons's motion— contains the terms relevant here. Based on the evidence presented, we agree. Article 5 of the original lease is titled "Public Area." Section 5.1 states that the landlord grants a non-exclusive license for customers and invitees to use the parking lot. Section 5.2 states, "Landlord shall at all times maintain the public area in a neat, clean and attractive condition and in good repair and shall maintain the surface area thereof in a level and smooth condition," and shall provide "appropriate directional signs, markers and lines." Section 5.3 of the lease states that the tenant shall "abide by such rules and regulations" the landlord deems necessary "for the management, safety, care and cleanliness of the public areas."

The five amendments to the lease submitted with Vons's motion are short adjustments that largely address payments owed to the landlord; they do not alter control of the public areas generally or the parking lot specifically. Miller testified that the sixth amendment also referred to the 1956 lease, and did not change control of the parking lot. In addition, Miller testified

13

that CPI had a contract with CAM to "police and remove all observable trash and debris from the grounds, including storefront walkways[ and] parking areas."

This evidence was sufficient to show who had control over the parking lot under the lease and its amendments, even though the sixth amendment itself was not submitted. Thus, the trial court did not abuse its discretion in impliedly overruling plaintiffs' evidentiary objection to the lease, and in relying on the evidence proffered. We therefore turn to plaintiffs' substantive arguments.

## B.     Vons's duty relating to the parking lot

Plaintiffs assert that Vons owed Tamayo a duty of care. Their arguments fall generally into two categories: control under the terms of the lease, and control based on Vons's use of the parking lot.[7] Vons asserts that it did not control the parking lot, and therefore plaintiffs cannot establish that Vons owed Tamayo a duty of care.

"The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.) "A defendant cannot be held liable for the defective or dangerous condition of property which it did not own, possess, or control." (*Isaacs v. Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134; accord, *Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1162 (*Alcaraz*), *Soto v. Union Pacific Railroad Co.* (2020) 45 Cal.App.5th 168, 177 (*Soto*).)

---

[7] Plaintiffs refer to the parking lot and crosswalk as separate areas, but it is undisputed that the crosswalk is in the parking lot.

1.     *Control under the lease*

As discussed above, the lease states that Vons's leased premises did not include the parking lot. Rather, the parking lot of the shopping center is deemed a public area, and the landlord has the duty to clean and maintain the parking lot. Section 5.2 of the lease states that the landlord "shall at all times maintain the public area in a neat, clean and attractive condition and in good repair." Section 5.3 of the lease states that the tenant shall "abide by such rules and regulations" the landlord deems necessary "for the management, safety, care and cleanliness of the public areas." In addition, Miller testified that Vons was not involved in or informed about CPI's contract with CAM regarding cleaning the public areas of the shopping center.

Plaintiffs argue that despite the lease language about the parking lot, the lease required Vons to maintain parts of the outside premises. For example, the lease required Vons to refrain from "obstructing any sidewalks [or] walkways," and to keep the leased premises "including sidewalks adjacent thereto . . . in a safe, neat and clean condition." They argue these express terms "are sufficient for a jury to conclude that Vons had a duty to invitees to keep the painted walkway . . . safe, neat, and clean."

This argument is not compelling. As a preliminary matter, whether Vons had a duty is not a fact question for a jury; "[w]hether a duty exists is a question of law to be resolved by the court." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213 (*Brown*).)

Moreover, the lease does not support plaintiffs' argument. First, it is undisputed that Tamayo fell in a crosswalk in the parking lot, not on the sidewalk adjacent to the store. Thus, Vons's obligations under the lease relating to "sidewalks" do not

15

apply. Second, assuming for the sake of argument there was a spilled substance in the crosswalk where Tamayo fell,[8] the evidence does not support a finding that Vons caused the spill or that the spill could be characterized as an "obstruction" under the lease. After the unidentified person dropped something in the crosswalk, several cars and people then passed over that portion of the crosswalk. Plaintiffs admit that Portillo and others "pass[ed] directly over the spill . . . on multiple, separate occasions," indicating that the crosswalk was not obstructed. Thus, the evidence does not suggest that Vons breached the lease provision requiring it to refrain from "obstructing" a "walkway."

The express terms of the lease therefore do not support a finding that Vons controlled the crosswalk.

2. *Control of the parking lot*

Plaintiffs assert that there is a disputed issue of fact as to whether Vons exercised "control" over the parking lot such that Vons had a duty to maintain the parking lot free from hazards and to warn Tamayo of a hazardous condition. Vons argues the evidence shows that it "had no right to manage, maintain, or exclude others from the common area," and that its use of the parking lot consisted of entering the parking lot "only incidentally and for brief periods." We agree with Vons.

---

[8]     Plaintiffs assert the video shows a customer "dropping a container filled with an unknown substance on the pedestrian crosswalk," the customer points out "the spill" to Fair, who then leaves the "hazardous condition unattended." As Vons correctly points out, however, there is no evidence regarding the nature of the item dropped, Fair testified he was not informed about any hazardous condition, and Portillo did not see any spilled substance. Indeed, even Tamayo testified she did not see any spilled substance before she slipped.

16

"Everyone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property . . . ." (Civ. Code, § 1714, subd. (a).) Notably, this "general duty to maintain the property one owns or occupies" does not "extend to abutting property that is owned *by others*." (*Lopez v. City of Los Angeles* (2020) 55 Cal.App.5th 244, 255 (*Lopez*), original italics.) Thus, "'[a] tenant ordinarily is not liable for injuries to his [or her] invitees occurring outside the leased premises on common passageways over which he [or she] has no control. [Citations.]'" (*Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1158 (*Alcaraz*).)

There is an exception to this general rule, however; "a defendant who lacks title to property still may be liable for an injury caused by a dangerous condition on that property if the defendant exercises *control* over the property." (*Alcaraz, supra*, 14 Cal.4th at p. 1158, italics added.) "The '"crucial element"' for imposing a duty in such circumstances is control [citation], the rationale being that whoever has the means to control the property can take steps to prevent the harm." (*Soto, supra,* 45 Cal.App.5th at p. 177.) Thus, a "person who owns or occupies land will owe a duty to maintain abutting . . . property in a reasonably safe condition if that person has 'exercise[d] control over th[at] property.'" (*Lopez, supra,* 55 Cal.App.5th at p. 255.)

In a landlord-tenant scenario, as here, "absent evidence that a tenant exercised 'actual' control of that portion of the premises where the plaintiff was injured, a tenant will not be held liable for the plaintiff's injuries where the lease does not confer a right of control." (*Moses v. Roger-McKeever* (2023) 91 Cal.App.5th 172, 181 (*Moses*).) "[T]o establish a tenant's duty of care where the lease does not confer upon him or her a right to

17

control that portion of the land that caused the plaintiff's injury, there must be a showing that the tenant took some affirmative action to assume responsibility for the safe condition of that portion of the land." (*Ibid*.)

Our Supreme Court addressed the issue of a defendant's control over land it does not own or possess in *Alcaraz, supra,* 14 Cal.4th 1149. There, a tenant was injured when he stepped into a utility meter box with a broken or missing cover in the lawn area of his apartment building. The plaintiff sued the owners of the apartment property. The owners cross-complained against the city, alleging that the meter box was on a narrow strip of city property. The superior court granted summary judgment in favor of the landowners. (*Id*. at pp. 1154-1155.)

The Supreme Court held there was a triable issue of fact about whether the landowners exercised control over the property where the meter box was located. (*Alcaraz, supra*, 14 Cal.4th at p. 1157.) The court explained, "Evidence was introduced establishing that defendants maintained the lawn that covered the approximately two-foot-wide portion of the strip of land owned by the city surrounding the meter box and adjoining their property and that, following plaintiff's injury, defendants constructed a fence that enclosed the entire lawn, including the portion located on the narrow strip of land owned by the city. From this evidence, a reasonable trier of fact could infer that defendants exercised control over this approximately two-foot-wide portion of the strip of land owned by the city and treated the land surrounding the meter box, which bordered defendants' property, as an extension of their front lawn." (*Id*. at pp. 1161-1162.)

18

Plaintiffs argue there is similar evidence of control here, because Vons regularly collected shopping carts from the parking lot, and because Vons employees testified that if they were alerted about a spill near the entrance of the store or in the parking lot, they would take steps to either clean it or warn patrons about it.

California cases are clear, however, that control requires more than incidental use or cleaning. The court in *Alcaraz* stated that "performing minimal, neighborly maintenance of property owned by another," without more, does not "constitute an exercise of control over property and give rise to a duty to protect or warn persons entering the property." (*Alcaraz, supra*, 14 Cal.4th at p. 1167.) In *Contreras v. Anderson* (1997) 59 Cal.App.4th 188, 200 (*Contreras*), regular gardening, tree trimming, and sweeping of an abutting property was insufficient as a matter of law to demonstrate control, because there was no "'dramatic assertion of a right normally associated with ownership or . . . possession,'" such as construction of a fence as in *Alcaraz*. In *Lopez, supra*, 55 Cal.App.5th at pages 259-262, a commercial business adjacent to a property with a pothole did not "control" the area with the pothole, even though the business regularly drove over the area, cleaned it, and agreed in its lease to keep the area surrounding its leased premises in "good" condition. To hold otherwise, the *Lopez* court reasoned, would allow the "control" exception to "swallow the general rule of 'no liability,' [and] decouple the rule from its policy by imposing liability upon owners and occupiers who have in no meaningful way actually exercised control" over adjacent land. (*Id.* at p. 261.)

Here, plaintiffs have not demonstrated control of the parking lot beyond "minimal, neighborly maintenance." (*Alcaraz,*

19

*supra*, 14 Cal.4th at p. 1167.)  Vons used the parking lot when it collected shopping carts, but in doing so it was managing its own equipment within the parking lot, not exercising control over the premises.  Notably, neither the equipment nor Vons's management of it is alleged to be related to Tamayo's injury.  Although Vons employees also testified they might clean a spill in the parking lot if they saw one, the agreement between CPI and CAM stated that CAM managed the cleaning and maintenance of the parking lot, and Hernandez testified that property management, not Vons, typically does cleanup in the parking lot.  Occasional cleaning does not rise to the level of "'dramatic[ally] assert[ing]'" dominion and control over" the crosswalk.  (*Lopez, supra*, 55 Cal.App.5th at p. 256.)  "[I]t is clear from *Alcaraz* that simple maintenance of an adjoining strip of land owned by another does not constitute an exercise of control over that property."  (*Contreras, supra*, 59 Cal.App.4th at p. 198.)

Plaintiffs further argue that "just like the fence erected in *Alcaraz*, after the incident, Vons erected a barrier of cones and shopping carts around the incident scene."  The circumstances are not similar.  Vons's assistance to Tamayo and Zayden while Tamayo remained in the driving lane of the busy parking lot demonstrated simple decency, not control over the premises.  This was not similar to the construction of a long-term barrier, such as the fence in *Alcaraz*, about which the Supreme Court observed, "It is obvious that the act of enclosing property with a fence constitutes an exercise of control over that property."  (*Alcaraz, supra*, 14 Cal.4th at p. 1167.)  Plaintiffs cite no authority suggesting that temporarily diverting traffic or otherwise assisting during an emergency constitutes control for purposes of premises liability.  Further, holding that premises

20

liability may be based on assistance to a plaintiff following an injury would be poor public policy. Such a holding could attach liability to after-the-fact assistance, thereby discouraging or punishing such aid. Plaintiffs cite no authority supporting such a policy.

Plaintiffs compare this case to *Southland Corp. v. Superior Court* (1988) 203 Cal.App.3d 656 (*Southland*). There, the plaintiff was physically attacked in a vacant lot next to a 7-Eleven store, which was regularly used for parking by the store's customers. The *Southland* court found there was a triable issue of fact as to whether the business had actual or apparent control over the vacant lot so as to create a "duty of care with respect to patrons injured by the criminal acts of third persons" that occurred on the lot. (*Id.* at p. 662.) The court focused on the foreseeability of a third party criminal act in light of the evidence that the store and vacant lot were "a hangout for local juveniles" who got into fights "from time to time." (*Id.* at pp. 661, 664-665.) Among the factors significant to the *Southland* court were that the lot provided the store with additional parking, which had a commercial benefit to the store, and that "the store employees had, on a number of occasions, taken action, including the request of police assistance, to remove juvenile loiterers from both the store premises and the adjacent lot." (*Id.* at pp. 666-667.)

We find *Southland* inapposite. In our case, there was no evidence that Vons regularly took any action to control the behavior of people in the parking lot. Nothing in *Southland* indicated that the vacant lot had any uses other than additional parking for the 7-Eleven, whereas here the parking lot was used by customers from multiple businesses. The *Southland* court did

21

not indicate that any other entity had control over the lot; in the instant case there is a lease specifying that an entity other than Vons is responsible for the lot's cleaning and maintenance.

*Seaber v. Hotel Del Coronado* (1991) 1 Cal.App.4th 481 (*Seaber*) is similar to this case in that it involved an injury in a crosswalk used by business patrons. There, a pedestrian was killed while in a marked crosswalk that connected a hotel with a parking lot commonly used by patrons. The plaintiffs sued the hotel for wrongful death, alleging that although the hotel did not own the crosswalk, the hotel was nevertheless partially responsible because it used the crosswalk for invitees' ingress and egress. The Court of Appeal rejected this argument, stating, "[I]t is undisputed that Cal Trans had control over the crosswalk and was responsible for making all final decisions regarding it. It would be inequitable to impose a regulatory and maintenance duty on an entity without the authority to control use. [Citations.] It would be unfair to impose upon the Hotel a duty to maintain the public crosswalk in a reasonably safe condition simply because some of the Hotel's patrons may have used the crosswalk with its knowledge. [Citation.]" (*Id.* at p. 492.) The court added, "the extent of the burden to the Hotel and like commercial establishments to police and regulate public crosswalks adjacent to their property is onerous." (*Id.* at p. 493.)

Here, similarly, Vons's non-exclusive use of the parking lot for customer ingress and egress did not rise to the level of control, especially in light of the evidence demonstrating that the landlord, rather than Vons, controlled the cleaning and maintenance of the parking lot. As noted above, "to establish a tenant's duty of care . . . there must be a showing that the tenant took some affirmative action to assume responsibility for the safe

condition" of the portion of unleased land where the plaintiff was injured. (*Moses, supra*, 91 Cal.App.5th at p. 181.) Plaintiffs made no showing that Vons "assume[d] responsibility" for the safe condition of the parking lot generally or the crosswalk specifically. (*Ibid.*)

This case is not similar to *Hassaine v. Club Demonstration Services, Inc.* (2022) 77 Cal.App.5th 843 *(Hassaine),* upon which plaintiffs rely. In *Hassaine*, the plaintiff slipped and fell inside a Costco store; she sued Costco and CDS, an independent contractor that operated food sample tables within the store. The trial court granted CDS's motion for summary judgment, but the Court of Appeal reversed. Its analysis focused not on CDS's alleged control of the premises, but on whether CDS owed the plaintiff a duty of care based on the special relationship between a business and its invitees. (*Hassaine, supra,* 77 Cal.App.5th at p. 853.) The court concluded that because CDS's business invitees were exclusively Costco customers, CDS owed the plaintiff the same duty of care that any business owed its own invitees on its own premises. (*Id.* at p. 853 and fn. 6.)

In this case, plaintiffs have not alleged that the landlord and Vons were in a business enterprise together. In addition, *Hassaine* did not address whether the lessee of a portion of a property may be found to "control" unleased common areas. Thus, the reasoning of *Hassaine* does not support a finding of control under the circumstances here.

In sum, the evidence in this case does not demonstrate a triable issue of fact as to whether Vons exercised control over the parking lot. Without evidence showing control, plaintiffs cannot establish the element of duty, which is a necessary element for

23

each cause of action against Vons.  Thus, summary judgment was appropriately granted.[9]

## DISPOSITION

The judgment is affirmed.  Vons is entitled to its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COGLIATI, J.[*]


We concur:


ZUKIN, P. J.


MORI, J.

---

[9]      Plaintiffs also argue the factors in *Rowland v. Christian* (1968) 69 Cal.2d 108, particularly foreseeability, should be considered in determining Vons's duty to Tamayo.  However, once a duty has been established, the *Rowland* factors are employed "to determine whether relevant policy considerations counsel limiting that duty." (*Brown, supra*, 11 Cal.5th at p. 209.) Because the evidence does not support a duty under the first step of this analysis, we need not consider the second step. We also need not consider Vons's argument that plaintiffs forfeited this theory by failing to raise it below.

[*] Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

24